[No. F028223. Fifth Dist. Aug. 26, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER LOPEZ, Defendant and Appellant.

COUNSEL

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert P. Whitlock and Leah Ann Alcazar, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DIBIASO, Acting P. J.—**

### STATEMENT OF THE CASE

On February 4, 1997, a complaint charging three felony counts against appellant Peter Lopez (hereafter Lopez) was filed in Tulare County Superior

Court. In count 1, Lopez was charged with grand theft of a vehicle, a violation of Penal Code[1] section 487, subdivision (d); in count 2, he was charged with unlawful driving or taking a vehicle, a violation of Vehicle Code section 10851; and, in count 3, he was charged with receipt of stolen property, a violation of section 496.

On February 19, 1997, pursuant to a negotiated disposition, Lopez pled guilty to count 2. Under the terms of the plea agreement, Lopez would receive an indicated sentence of not more than 270 days in custody, a restitution fine, and felony probation, and the other 2 charges would be dismissed.

On March 18, 1997, Lopez was sentenced to three years' felony probation, with a term of two hundred seventy days to be served in the Tulare County jail, a $200 restitution fine, and a penalty assessment of $340. Various conditions of probation were imposed.

STATEMENT OF FACTS

At approximately 2 a.m. on February 1, 1997, an officer with the Lindsey Police Department saw a vehicle stopped in the middle of the roadway, with its driver's side door open and its brake lights illuminated. A codefendant, Miguel Perez, was standing at the rear of the vehicle; Lopez was sitting in the driver's seat. As the officer approached, Lopez and Perez began running away. The officer gave chase on foot, identified himself, and ordered Lopez and Perez to stop. They ignored the command and continued to flee. The two were eventually apprehended and taken into custody.

DISCUSSION

*Introduction*

During the change of plea hearing on February 19, 1997, in addition to other advisements, the court told Lopez that if he pled guilty to the count 2 offense:

"Then you will be placed on felony probation and receive not more than 270 days in custody initially. You will be required to pay any actual restitution owing to the victim.

"You are subject to a fine of up to $10,000 plus penalty assessments. A restitution fine of up to $10,000. *Other standard terms of probation will be imposed.*" (Italics added.)

---

[1]References to code sections are to the Penal Code unless otherwise specified.

The court did not advise Lopez of his rights under section 1192.5 at any time before he entered his plea.[2]

The probation report, prepared and filed on March 14, 1997, noted that: "A review of the Tulare County Sheriff's Department classification record, reveals that the defendant is a self admitted gang member and claims 'Norteno'. He has a tattoo of 'XIV' on his left thumb and 'XIV' on his stomach. He has a drug abuse history of using methamphetamine, cocaine, and PCP."

The probation report then recommended the imposition of 17 separate conditions of probation, including the following, which was No. 15: "The defendant is not to be involved in any gang activities or associate with any gang members, nor wear or possess, any item of identified gang clothing, including: any item of clothing with gang insignia, moniker, color pattern, bandanas, jewelry with any gang significance, nor shall the defendant display any gang insignia, moniker, or other markings of gang significance on his/her person or property as may be identified by Law Enforcement or the Probation Officer."

At the sentencing hearing on March 18, 1997, the court announced its tentative decision to follow the recommendations of the probation department, except that Lopez's in custody time would be reduced from the

---

[2]Section 1192.5 states:

"Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, . . . the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

"Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea.

"If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea.

"If the plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter the plea or pleas as would otherwise have been available.

"If the plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

recommended 370 days to the indicated 270 days.[3] When the court asked for comments from counsel, Lopez's attorney asked the court to strike the "collateral information" about Lopez's gang membership. Counsel asserted there was no evidence the present charges were gang related, the police report did not say Lopez was wearing gang clothing when apprehended, the information was irrelevant, and the classification records could be erroneous. The court denied Lopez's request.

After the court read condition No. 15, Lopez's counsel inquired about why this term of probation was being imposed. The trial court responded that Lopez was an admitted gang member and had engaged in criminal activities during the early morning hours with a codefendant, and these facts generated a rational inference that the current crime could have been related to gang activity.

Defense counsel responded that condition No. 15 infringed on Lopez's constitutional rights to freedom of association and freedom of speech and thus could not be lawfully imposed because there was no evidence the current crime was gang related. The trial court overruled the objection, completed the pronouncement of sentence, and notified Lopez of his appeal rights.

Lopez now contends the condition of probation proscribing gang association and indicia must be stricken or narrowed because it: 1) is not reasonably related to the instant crime or to future criminality; 2) violates his constitutional rights of freedom of association, speech and due process; and 3) violates the terms of the plea agreement.

*Relationship to Instant Crime or Future Criminality*

■ Lopez first argues the trial court erred in imposing condition No. 15 because his relationship to a gang or gangs was not reasonably related to his present crime or to his future criminality. The People acknowledge there is nothing in the record which suggests the offense to which Lopez pled guilty was the product of gang activity. Nonetheless, the People maintain the information in the probation report about Lopez's gang connections justified the condition.

---

[3]The probation office is required to prepare a report for the trial court's consideration when the defendant is convicted of a felony, with recommendations as to conditions of probation. (§ 1203, subd. (b)(2)(A); Cal. Rules of Court, rules 411, 411.5; *People* v. *Welch* (1993) 5 Cal.4th 228, 234 [19 Cal.Rptr.2d 520, 851 P.2d 802].) Likewise, the trial court is required to consider the probation officer's report in determining an appropriate punishment, unless the prosecution and defense enter into a written stipulation to the contrary which is approved by the court. (§ 1203, subd. (b)(4); *People* v. *Welch, supra,* 5 Cal.4th at p. 234.) No such stipulation appears in the record in the instant case.

■ Trial courts have broad discretion to set conditions of probation in order to "foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1." (*People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67]; see § 1203.1, subd. (j); Cal. Rules of Court, rule 410.) If it serves these dual purposes, a probation condition may impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." (*People* v. *Peck* (1996) 52 Cal.App.4th 351, 362 [61 Cal.Rptr.2d 1].)

However, the trial court's discretion in setting the conditions of probation is not unbounded. A term of probation is invalid if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].)[4] Conversely, ". . . a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid.*)

■ Condition No. 15 was not an abuse of the trial court's discretion in this case. Prohibitions against a variety of gang-related activities have been upheld when imposed upon juvenile offenders. (*In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500-1502 [281 Cal.Rptr. 6]; see also *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1617 [264 Cal.Rptr. 476]; *In re Josh W.* (1997) 55 Cal.App.4th 1, 6 [63 Cal.Rptr.2d 701].)[5] Because "[a]ssociation with gang members is the first step to involvement in gang activity," such conditions have been found to be "reasonably designed to prevent future criminal behavior." (*In re Laylah K., supra,* 229 Cal.App.3d at pp. 1501, 1503.) Whether the minor was currently connected with a gang has not been critical. Thus, probation terms have been approved which bar minors from being present at gang gathering areas, associating with gang members, and wearing gang clothing. (*Id.* at p. 1502.)

---

[4]These factors are conjunctive, not disjunctive. (*People* v. *Lent, supra,* 15 Cal.3d at p. 481, fn. 1.)

[5]The discussion in this section of our opinion assumes that condition No. 15 passes constitutional muster. Because we will modify the condition to render it constitutionally sound (see discussion *post*), our reference to condition No. 15 in this part of our opinion is to its form as it will be modified, to wit: "Defendant is not to be involved in or associate with any person known to defendant to be a gang member. He may not wear or possess any item of gang clothing known to be such by defendant, including any gang insignia, moniker or pattern, jewelry with gang significance nor may he display any gang insignia, moniker or other markings of gang significance known to be such by defendant on his person or property, except that he shall not be required to remove the tattoos on his body that existed at the time of sentencing. For purposes of this paragraph, the word gang means a criminal street gang as defined in Penal Code section 186.22, subdivisions (e) and (f)."

We believe probationary proscriptions against gang-related conduct are equally proper when imposed upon adult offenders such as Lopez. The path from gang associations to criminal gang activity is open to adults as well as to minors. Though the courts have sometimes sustained probation conditions imposed upon a juvenile offender that would be "unconstitutional or otherwise improper" if imposed upon an adult offender, the basis for this distinction has been that a juvenile probationary order is a part of a final order, which the minor may not reject, aimed at ensuring the minor's reformation and rehabilitation, while an adult probationary order, which the defendant may reject, is an act of leniency in lieu of the prescribed statutory punishment. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 80-82 [32 Cal.Rptr.2d 33, 876 P.2d 519].) This difference is not of material effect here. The rehabilitative point of condition No. 15 is the same with respect to an adult such as Lopez as it is with respect to a minor such as the juvenile in *Laylah.*

The federal courts, acting under the authority of federal statutes (including 18 U.S.C. § 3563(b)(6)) have found curtailments of an adult probationer's associations with specified groups to be proper where such restrictions serve a rehabilitative purpose, even where the crime in issue was not shown to have been group related.[6] (*U.S.* v. *Showalter* (7th Cir. 1991) 933 F.2d 573, 575; *Malone* v. *United States* (9th Cir. 1974) 502 F.2d 554, 555-556; *Porth* v. *Templar* (10th Cir. 1971) 453 F.2d 330, 334.) In *Malone* v. *United States, supra,* 502 F.2d at page 555, the defendant was convicted of the unlawful export of firearms. He was emotionally involved in the activities of the Irish Republican movement. A probation condition prevented him from participating in any American Irish Republican movement, from belonging to any Irish organization, from participating in any Irish Catholic organization, from visiting any Irish pubs, and from accepting employment that would directly or indirectly associate him with any Irish organization. (*Ibid.*) The Ninth Circuit concluded that this broad range of proscriptions was "reasonably related to the goals of probation and the accomplishment of public order and safety and . . . [did] not constitute an abuse of the [trial court's] discretion in the circumstances." (*Id.* at p. 557.) In *U.S.* v. *Showalter, supra,* 933 F.2d at page 575, the circuit court approved of a condition that prohibited the defendant from associating with "skinheads and neo-Nazis." (*Id.* at p. 574.) The basis for the holding was the trial court's determination that because "[these] groups embrace violence and the threat of violence as a method of advancing their views, . . . [defendant's] association with them would create a high likelihood that [he] would be drawn into that same behavior." (*Ibid.*; see also *United States* v. *Smith* (5th Cir. 1969) 414 F.2d

---

[6]Federal laws give the United States District Courts the discretion to impose conditions of probation (now termed "supervised release" by the relevant statutes) which prohibit the defendant from "associating unnecessarily with specified persons." (18 U.S.C. § 3563(b)(6).)

630, 636 [trial court has discretion to restrict the probationer's association with "groups that would palpably encourage him to repeat his criminal conduct"]; *Porth* v. *Templar, supra,* 453 F.2d at p. 334.) In *Showalter,* the crime of which the defendant was convicted was not connected to any activity by the groups described in the probation condition; the defendant had brandished a weapon when being evicted from his apartment for non-payment of rent and other lease violations. (933 F.2d at p. 574.)

The probation report pertaining to Lopez disclosed that he admitted membership in the Norteno gang. The gang apparently has some history of overt criminal behavior because it was known to the Tulare County Sheriff's Department. The present conviction is Lopez's first adult felony, but he has a lengthy history of juvenile offenses and misdemeanor adult crimes. Although an adult, he was only in his early 20's. Even if the evidence was insufficient to show that the present crime was in some manner gang related, Lopez's age, gang affiliation, and consistent and increasing pattern of criminal behavior warranted a conclusion by the trial court that Lopez's disassociation from gang-connected activities was an essential element of any probationary effort at rehabilitation because it would insulate him from a source of temptation to continue to pursue a criminal lifestyle. (See *In re Laylah K., supra,* 229 Cal.App.3d at p. 1501; *U.S.* v. *Showalter, supra,* 933 F.2d at p. 575; *Malone* v. *United States, supra,* 502 F.2d at p. 557.)

The two specific elements of condition No. 15 were legitimately related to this end. The restriction on contacts with gang members was reasonable because "[a]ssociation with gang members is the first step of involvement in gang activity." (*In re Laylah K., supra,* 229 Cal.App.3d at p. 1501.) The prevention of future criminality was also served by this prohibition because it insured that Lopez would not be present at confrontational situations between rival gangs; hostility among different gangs is often an underlying cause of criminal activity. (See *People* v. *Hawthorne* (1992) 4 Cal.4th 43, 51, fn. 2 [14 Cal.Rptr.2d 133, 841 P.2d 118].) The restriction on the display of gang indicia was reasonable because it removed from Lopez the visible reminders of his past gang connection. (*In re Laylah K., supra,* 229 Cal.App.3d at p. 1502.)

We are therefore satisfied the inclusion of the gang-based probationary condition was not unlawful. Instead, under the circumstances, it promoted section 1203.1's goals of rehabilitation and public safety by forbidding conduct reasonably related to future criminality. (*People* v. *Lent, supra,* 15 Cal.3d at p. 486.)

*Constitutionality*

Lopez alternatively contends that even if the gang-related restriction is sustainable under *Lent*, it is nevertheless unconstitutional.[7] Specifically, Lopez maintains that condition No. 15 is (1) overbroad and therefore infringed on his rights of free association and free speech, and (2) is vague and therefore violated due process.[8]

*First Amendment*

Lopez contends condition No. 15 unjustifiably curtails his constitutional right of free association because it forbids contact with a member of a gang even though Lopez may not know of the person's gang affiliation. (*People* v. *Garcia* (1993) 19 Cal.App.4th 97, 102-103 [23 Cal.Rptr.2d 340] [language prohibited association with all felons regardless of the defendant's knowledge].) Lopez contends condition No. 15 unjustifiably curtails his constitutional right of free speech because it restricts his display of gang indicia even though Lopez may not know of any connection between, for example, an item of clothing or color and a particular gang.[9] Lopez also contends that neither aspect of condition No. 15 can be modified to make it applicable to only members or indicia of the Norteno gang, in which he admits membership, or to any other gang, because the prosecutor did not prove at sentencing that the Nortenos or any other gang was engaged in criminal activity. Lopez relies upon the principle that conditions which compel a waiver of the defendant's constitutional rights "must be narrowly drawn." (*People* v. *Garcia, supra,* 19 Cal.App.4th at pp. 102-103; *People* v. *Burden* (1988) 205 Cal.App.3d 1277, 1279 [253 Cal.Rptr. 130].) According to Lopez, because condition No. 15 is overbroad it is " ' "not reasonably related to a compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." ' " (*People* v. *Garcia, supra,* 19 Cal.App.4th at p. 102; *People* v. *Burden, supra,* 205 Cal.App.3d at p. 1279.) The People claim condition No. 15 can be saved if it is modified to apply to only those persons known by Lopez to be gang members. (*Burden, supra,* at p. 1279.)

■ The right to associate, as Lopez concedes, "may be restricted if reasonably necessary to accomplish the essential needs of the state and

[7]Lopez once again asserts in this portion of his argument that condition No. 15 serves no rehabilitative purpose because there was no factual basis for a determination that the crime to which he pled was gang related. We have already disposed of this argument.

[8]While Lopez refers at one point in his brief to "privacy," it is clear from the balance of his argument that he is challenging condition No. 15 on the basis of an infringement of his freedom of speech.

[9]According to Lopez, all colors and items of clothing have significance to one gang or another and therefore under the phrasing of condition No. 15 he says he risks a prison term "whenever he buys a new shirt."

public order." (*Malone* v. *United States, supra,* 502 F.2d at p. 556, cert. den. 419 U.S. 1124 [95 S.Ct. 809, 42 L.Ed.2d 824]; *People* v. *Peck, supra,* 52 Cal.App.4th at p. 363.) Such restrictions are " 'part of the nature of the criminal process. [Citation.]' " (*Peck, supra,* at p. 363.) A limitation on the right to associate which takes the form of a probation condition is permissible if it is "(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends." ▉▉▉ (*U.S.* v. *Bollinger* (9th Cir. 1991) 940 F.2d 478, 480; see *Peck, supra,* at p. 362; *People* v. *Wardlow* (1991) 227 Cal.App.3d 360, 367 [278 Cal.Rptr. 1].)[10]

▉ Similarly, the right of free speech, as Lopez also concedes, "is not absolute at all times and under all circumstances." (*Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 571 [62 S.Ct. 766, 769, 86 L.Ed. 1031].) Prohibiting speech which is likely to constitute a breach of the peace, " 'including "classical fighting words," [or] words in current use less "classical" but equally likely to cause violence, and other disorderly words,' " is constitutionally allowable. (*Id.* at p. 573 [62 S.Ct. at p. 770].) The California Supreme Court has noted that "First Amendment protects the inherent communicative value . . . up to the point at which the state's compelling interest in maintaining order must outweigh the speaker's freedom of expression." (*In re M.S.* (1995) 10 Cal.4th 698, 714 [42 Cal.Rptr.2d 355, 896 P.2d 1365]; see *Madsen* v. *Women's Health Center, Inc.* (1994) 512 U.S. 753, 765 [114 S.Ct. 2516, 2524-2525, 129 L.Ed.2d 593] [Speech may be burdened no more than is necessary to serve an important governmental interest.]; *People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at p. 1120 [same].)

▉ We agree that condition No. 15 suffers from constitutionally fatal overbreadth because it prohibits Lopez from associating with persons not known to him to be gang members. (See *People* v. *Garcia, supra,* 19 Cal.App.4th at p. 102; *People* v. *Hackler* (1993) 13 Cal.App.4th 1049, 1058 [16 Cal.Rptr.2d 681]; *People* v. *Robinson* (1988) 199 Cal.App.3d 816, 817 [245 Cal.Rptr. 50]; see also *People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th

---

[10]The United States Constitution does not protect " 'a generalized right of "social association;" ' " it instead recognizes only a limited right to associate. (*People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1110 [60 Cal.Rptr.2d 277, 929 P.2d 596].) Two species of associations have been found to fall under the protection of the First Amendment: those with an intrinsic or intimate value and those that are instrumental to forms of religious and political expression. (*Ibid.*) The first are associations exemplified by personal affiliations that "attend the creation and sustenance of a family—marriage . . . ; the raising and education of children [citation]; and cohabitation with one's relatives." (*Roberts* v. *United States Jaycees* (1984) 468 U.S. 609, 619 [104 S.Ct. 3244, 619, 82 L.Ed.2d 462].) The second are associations formed for the purpose of pursuing "a wide variety of political, social, economic, educational, religious, and cultural ends," and as such are closely aligned with freedom of speech. (*Id.* at p. 622 [104 S.Ct. at p. 3252].)

at p. 1117.) In *Garcia*, we held that a probation condition was not "sufficiently narrowly drawn" where the condition required the defendant to refrain from associating with persons not known to the defendant to be users and sellers of narcotics, or felons, or ex-felons. (*Garcia, supra,* at p. 102.) We modified the condition to add the element of knowledge and affirmed it as modified. (*Id.* at p. 103.) We will so modify condition No. 15 here. (See *Gallo, supra,* at p. 1117.)

We also agree with Lopez that condition No. 15 suffers from constitutionally fatal overbreadth because it prohibits Lopez from displaying indicia not known to him to be gang related. We will in this respect modify the condition so that it will apply only to displays of symbols known by Lopez to have a gang connotation. (See *People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at p. 1117.)

 It is apparent from the foregoing that we reject Lopez's claim that, because the prosecution did not prove the Norteño's or any other gang had engaged in criminal activity, condition No. 15 is not susceptible of modification to correct its overbreadth. To compel the prosecution to prove at sentencing which groups are "gangs" within the ambit of the condition is equivalent to requiring the prosecution to prove at sentencing which persons are "users and sellers of narcotics, felons and ex-felons" (*People* v. *Garcia, supra,* 19 Cal.App.4th at p. 102) or possessors of a "criminal record" (*People* v. *Hackler, supra,* 13 Cal.App.4th at p. 1058) with whom a defendant may not associate as a condition of probation. Such a demand is obviously impractical and likely impossible. No case we know of has saddled the prosecution with any such burden, and neither will we. An otherwise proper probation condition need only articulate a standard of conduct of sufficient precision to inform the defendant of what is required of him or her and to allow the court to determine whether a violation has occurred. (*People* v. *Hernandez* (1991) 226 Cal.App.3d 1374, 1380 [277 Cal.Rptr. 444].) Nothing we have found suggests the prosecution must further validate a provision which complies with this standard by demonstrating for the defendant, when the condition is imposed, every circumstance that would constitute a future violation.

*Fourteenth Amendment*

Lopez contends condition No. 15 violates his Fourteenth Amendment due process rights because it is "so broad and so vague that [Lopez] runs the risk of being violated at the whim of any police or probation officer." As we understand his argument, Lopez takes the position (1) the condition does not make clear that the word "gang" means only associations or groups which

have criminal activities as their primary purpose, and (2) the provision which purports to describe the prohibited gang indicia as that "identified by Law Enforcement or the Probation Officer" does not set a clear standard of conduct and thus subjects Lopez to being charged and convicted of an unwitting violation of the condition.

■ The concept of unconstitutional vagueness is related to the concept of unconstitutional overbreadth, but "there are important differences." (*People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at p. 1115.) " 'A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct.' " (*Ibid.*) The underlying concern of the vagueness doctrine is the core due process requirement of adequate *notice:*

" 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' [Citations.] The operative corollary is that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citation.]

". . . Thus, a law that is 'void for vagueness' not only fails to provide adequate notice to those who must observe its strictures, but also 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation.]" (*People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at pp. 1115-1116.)

■ A probation condition is subject to the "void for vagueness" doctrine, and thus "must be sufficiently precise for the probationer to know what is required of him . . . ." (*People* v. *Reinertson* (1986) 178 Cal.App.3d 320, 324-325 [223 Cal.Rptr. 670]; *People* v. *Hernandez, supra,* 226 Cal.App.3d at p. 1380.)

Two principles guide the evaluation of whether a law or, in this case a probation condition, is unconstitutionally vague. First, "abstract legal commands must be applied in a specific *context.* A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness." (*People* ex rel. *Gallo, supra,* 14 Cal.4th at p. 1116.) Second, only reasonable specificity is required. (*Id.* at p. 1117.) Thus, a statute "will not be held void for vagueness 'if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources.' " (*Ibid.*)

■ We agree with Lopez that the word "gang" in condition No. 15 is, on its face, uncertain in meaning. Although "gang" has in the recent past likely acquired generally sinister implications, the word has considerable benign connotations. Webster's New International Dictionary contains these definitions, among others, for the word: "b: a number of individuals making up a group: as (1): a group of persons working under the same direction or at the same task . . . (2): a company of criminals . . . (3): an elementary and close-knit social group of spontaneous origin; *esp.* : such a unit composed of antisocial adolescents . . . (4): a group of persons acting in accord who are believed to engage in improper acts or to be influenced by self-seeking, corrupt, or unworthy motives . . . (5): a group of congenial persons having close and informal social relations: a group of persons drawn together by a community of tastes, interests, or activity . . . ." (Webster's New Internat. Dict. (3d ed. 1986) p. 934.)

Given this commonplace definition, were we compelled to decide the issue in the abstract we might concur in Lopez's assertion condition No. 15 is unenforceable. The Supreme Court in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888], cited by Lopez, came to such a conclusion with respect to a New Jersey statute that made criminal a person's membership in a gang, which was defined as a group of two or more persons. (*Id.* at p. 452 [59 S.Ct. at pp. 618-619].) The United States Supreme Court held that, because it "condemns no act or omission" and because "the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain," the statute "must be condemned as repugnant to the due process clause of the Fourteenth Amendment." (*Id.* at p. 458 [59 S.Ct. at p. 621].) The court noted the "numerous and varied" definitions of the word "gang" in dictionaries and "historical and sociological writings"; the court also noted its inability to find any definition of the word in the statutory, case, or common law or to find "any other statute attempting to make it criminal to be a member of a 'gang.' " (*Lanzetta* v. *New Jersey, supra,* 306 U.S. at pp. 453-455 [59 S.Ct. at p. 620].) As the court saw it: "[W]e cannot, [find] that 'gang' has ever been limited in meaning to a group having purpose to commit any particular offense or class of crimes, or that it has not quite frequently been used in reference to groups of two or more persons not to be suspected of criminality or of anything that is unlawful. The dictionary definitions . . . extend to persons acting together for some purpose, 'usually criminal,' or 'mainly for criminal purposes.' So defined, the purposes of those constituting some gangs may be commendable, as, for example, groups of workers engaged under leadership in any lawful undertaking." (*Lanzetta, supra,* at p. 457 [59 S.Ct. at p. 621].)

Here, when "gang" is considered in the context in which it is found in condition No. 15, and with regard for the purpose of the provision in which

it is found, it is apparent the word was intended to apply only to associations which have for their purpose the commission of crimes. As we have already decided, condition No. 15 is valid under the principles of *Lent* because it is reasonably calculated to rehabilitate Lopez by deterring him from engaging in future illegal conduct. This purpose would hardly be served by preventing Lopez from associating with or displaying insignia of groups which engage in only lawful conduct.

The contextual construction of the word "gang" to mean a group primarily engaged in the pursuit of criminal activities tends to give it a "constitutionally sufficient concreteness." (*People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at p. 1116.) Activities of an association which deprive third parties of their lawful rights fall outside the constitutional pale. (See *id.* at p. 1112.) The commission of crimes is the most apparent manifestation of such unprotected conduct. The performance of acts that constitute a civil nuisance is another. (*Ibid.*)

California has at least one statute in its penal laws which contains a detailed definition of a criminal "gang." Section 186.22, a provision of the STEP Act,[11] (1) criminalizes active participation in any "criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" (§ 186.22, subd. (a)); and (2) mandates the imposition of an enhanced term of punishment upon a person convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)). For purposes of this statute, the phrase "criminal street gang" is defined as: "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of [23 identified crimes], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).)

"Pattern of criminal gang activity" under the statute means: "the commission of, attempted commission of, or solicitation of, sustained juvenile petition for, or conviction of two or more of [certain identified crimes], provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a

---

[11]Street Terrorism Enforcement and Prevention Act, section 186.20 et seq.

prior offense, and the offenses were committed on separate occasions, or by two or more persons[.]"[12] (§ 186.22, subd. (e).)

Section 186.22 has been upheld against a variety of constitutional challenges, including claims based upon the First Amendment and the due process clause of the Fourteenth. (See *People* v. *Gardeley* (1996) 14 Cal.4th 605, 622-633 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *People* v. *Green* (1991) 227 Cal.App.3d 692, 698-704 [278 Cal.Rptr. 140]; *People* v. *Gamez* (1991) 235 Cal.App.3d 957, 969-976 [286 Cal.Rptr. 894]; *In re Alberto R.* (1991) 235 Cal.App.3d 1309, 1323-1324 [1 Cal.Rptr.2d 348].) As these cases have explained, the carefully crafted terms of the statute ensure that mere membership in a criminal street gang will not be punished and that groups or associations whose primary purpose is not the commission of crime will be excluded from coverage. (See *People* v. *Gamez, supra,* 235 Cal.App.3d at pp. 970-971, 973-974; *In re Alberto R., supra,* 235 Cal.App.3d at p. 1324.)

---

[12]The crimes identified in subdivisions (e) and (f) of section 186.22 are:

"(1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245.

"(2) Robbery, as defined in Chapter 4 (commencing with Section 211) of Title 8 of Part 1.

"(3) Unlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1.

"(4) The sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances as defined in Sections 11054, 11055, 11056, 11057, and 11058 of the Health and Safety Code.

"(5) Shooting at an inhabited dwelling or occupied motor vehicle, as defined in Section 246.

"(6) Discharging or permitting the discharge of a firearm from a motor vehicle, as defined in subdivisions (a) and (b) of Section 12034.

"(7) Arson, as defined in Chapter 1 (commencing with Section 450) of Title 13.

"(8) The intimidation of witnesses and victims, as defined in Section 136.1.

"(9) Grand theft, as defined in Section 487, when the value of the money, labor, or real or personal property taken exceeds ten thousand dollars ($10,000).

"(10) Grand theft of any vehicle, trailer, or vessel, as described in Section 487h.

"(11) Burglary, as defined in Section 459.

"(12) Rape, as defined in Section 261.

"(13) Looting, as defined in Section 463.

"(14) Moneylaundering, as defined in Section 186.10.

"(15) Kidnapping, as defined in Section 207.

"(16) Mayhem, as defined in Section 203.

"(17) Aggravated mayhem, as defined in Section 205.

"(18) Torture, as defined in Section 206.

"(19) Felony extortion, as defined in Sections 518 and 520.

"(20) Felony vandalism, as defined in paragraph (1) of subdivision (b) of Section 594.

"(21) Carjacking, as defined in Section 215.

"(22) The sale, delivery, or transfer of a firearm, as defined in Section 12072.

"(23) Possession of a pistol, revolver, or other firearm capable of being concealed upon the person in violation of paragraph (1) of subdivision (a) of Section 12101."

Because section 186.22 has withstood attack on the same constitutional grounds advanced here by Lopez against condition No. 15, we believe it appropriate to order modification of the probation condition in issue so as to incorporate into it the definitions contained in subdivisions (e) and (f) of the statute. By so amending the condition, any due process concerns about it will be eliminated and Lopez will be unambiguously notified of the standard of conduct required of him. (See *People* v. *Gardeley, supra,* 14 Cal.4th at pp. 622-623 [detailed requirements of section 186.22 are sufficiently explicit to inform those subject to it about what constitutes a criminal street gang]; *People* v. *Heitzman* (1994) 9 Cal.4th 189, 200 [37 Cal.Rptr.2d 236, 886 P.2d 1229] [citizens are required to inform themselves of a statute's language, legislative history and subsequent judicial construction]; *People* v. *Bamba* (1997) 58 Cal.App.4th 1113, 1120 [68 Cal.Rptr.2d 450] [same].)

Moreover, such a modification will not disturb the rehabilitative end of condition No. 15. The provision aims at deterring Lopez from future criminality by compelling him to avoid actions and associations which provide temptations to violate the Penal Code. Read in this context, the word "gang" in condition No. 15 contemplates precisely the sort of criminally oriented association described in subdivisions (e) and (f) of section 186.22. Were the word "gang" in the condition construed to mean anything less, the condition would be subject to constitutional question on the grounds raised here and in those cases which have passed upon the statute. (See *People* v. *Gardeley, supra,* 14 Cal.4th at pp. 623-624; *People* v. *Gamez, supra,* 235 Cal.App.3d at pp. 970-971.)

■ The modifications to condition No. 15 that we will order will also resolve the issues raised by Lopez about the prohibition against the display of gang indicia "identified by Law Enforcement or the Probation Officer." Without at least the insertion in this aspect of the condition of a knowledge element, Lopez was subject to being charged with an unwitting violation of the condition because nothing in it required the police or the probation office to apprise Lopez of the "identified" items of gang dress before he was charged with a violation. In this respect, then, the unmodified condition was inconsistent with the rule that a probation condition "must be sufficiently precise for the probationer to know what is required of him . . . ." (*People* v. *Reinertson, supra,* 178 Cal.App.3d at pp. 324-325; *People* v. *Hernandez, supra,* 226 Cal.App.3d at p. 1380.)

Notwithstanding the modifications we shall make in condition No. 15, a problem involving the reference to law enforcement and the probation office still remains. As a result of our modifications, the phrase might have a limiting effect; in other words, even though Lopez may know that a particular item of indicia is related to a "criminal street gang" as defined in section

186.22, subdivision (f), he might not be in violation of the prohibition because the item has not yet been "identified" to Lopez by law enforcement or the probation office. Because we are not certain whether the reference to "Law Enforcement or the Probation Officer" will retain any value under the condition as modified, we will not strike it. The trial court on remand, and on motion by either party, may reassess whether it would serve any purpose to retain the phrase in light of the modifications we will order.

*Plea Agreement*

In the final portion of his brief, Lopez argues that even if condition No. 15 is valid, it cannot be imposed in this case because it violates the plea agreement and thus his "due process right to the benefit of his plea agreement." He also challenges the condition because, according to him, it would require him to undergo surgery to remove from his skin the gang tattoos that existed at the time of sentencing. ▇▇▇▇ Lopez did not raise either objection at sentencing, and asserts that the issues have not been waived for purposes of appeal.[13] The People impliedly concede the issue is properly before us.

▇▇ When a defendant enters a plea in exchange for specified benefits, such as dismissal of other counts or a particular punishment, both the defendant and the state must abide by the bargain, and the punishment imposed by the court "may not significantly exceed that which the parties agreed upon." (*People* v. *Walker, supra,* 54 Cal.3d at p. 1024; see also *People* v. *Olea* (1997) 59 Cal.App.4th 1289, 1296 [69 Cal.Rptr.2d 722]; *People* v. *Clark* (1992) 7 Cal.App.4th 1041, 1050 [9 Cal.Rptr.2d 726].)[14] "[W]hen a plea rests in any significant degree *on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or*

[13]The basis for this contention is the trial court's failure to give the advisements required by section 1192.5. Although the trial court informed Lopez of his *Boykin-Tahl (Boykin* v. *Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) rights, the court failed to tell Lopez about his right under section 1192.5 to withdraw his plea if the court imposed a sentence other than that agreed upon in plea negotiations. Absent compliance with section 1192.5, Lopez's failure to object at sentencing on the ground that the sentence imposed violates the plea agreement does not constitute a waiver. (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1025 [1 Cal.Rptr.2d 902, 819 P.2d 861].)

[14]In *Walker,* the bargain required the defendant to plead guilty to attempted use of a destructive device with intent to injure or intimidate in return for the dismissal of another charge and an agreement that the prosecutor would seek only a five-year prison term. The terms of the deal made no reference to a fine. When it took the defendant's plea, the trial court explained that the defendant could be sentenced to a maximum of seven years and a fine of up to $10,000. The probation report recommended a fine of $7,000. The court sentenced the defendant to the agreed upon five-year prison term, but also imposed a $5,000 restitution fine. The Supreme Court found the imposition of the $5,000 fine to be a violation of the plea

*consideration, such promise must be fulfilled.*" (*Santobello* v. *New York* (1971) 404 U.S. 257, 262 [92 S.Ct. 495, 499, 30 L.Ed.2d 427], italics added.) Failure of the state to honor the agreement violates the defendant's due process rights for which the defendant is entitled to some remedy. (*People* v. *Walker, supra,* 54 Cal.3d at p. 1024.)

However, the imposition of an additional sentence term does not constitute a violation of a plea agreement if the term was not encompassed by the parties' plea negotiations. (*In re Moser* (1993) 6 Cal.4th 342, 357 [24 Cal.Rptr.2d 723, 862 P.2d 723] [length of parole]; *People* v. *McClellan* (1993) 6 Cal.4th 367, 380 [24 Cal.Rptr.2d 739, 862 P.2d 739] [registration as a sex offender].) Moreover, "the variance must be 'significant' in the context of the plea bargain as a whole to violate the defendant's rights. A punishment or related condition that is insignificant relative to the whole, such as a standard condition of probation, may be imposed whether or not it was part of the express negotiations." (*People* v. *Walker, supra,* 54 Cal.3d at p. 1024.)

 There is no suggestion in this record that condition No. 15, or any gang-related probationary term, was the subject of the negotiations which culminated in Lopez's plea. The exchange for Lopez's plea to the single felony was a sentence of three years' probation, with a specified amount of county jail time and a fine, along with dismissal of the other two felony counts. Absent some evidence that the People's consideration for the deal was the omission of condition No. 15 or its equivalent, the condition cannot be said to have been a part of the "bargain" agreed to by Lopez and the prosecution. (*Santobello* v. *New York, supra,* 404 U.S. at p. 262 [92 S.Ct. at pp. 498-499].) There is also no indication in the record, and no assertion on appeal, that the prosecution in any way misled Lopez as to what conditions of probation would be imposed. (*People* v. *McClellan, supra,* 6 Cal.4th at p. 367.)[15]

In any event, we find condition No. 15, as it will be modified pursuant to our disposition, not to be " 'significant' in the context of the plea bargain as a whole." (*People* v. *Walker, supra,* 54 Cal.3d at p. 1024.) A standard condition of probation, even if not agreed upon or discussed, is an immaterial deviation from the agreement as a matter of law. (*Ibid.*) Lopez implicitly acknowledges that one of the other conditions imposed upon him—to "obey

agreement, and reduced it to the statutory minimum of $100. (*People* v. *Walker, supra,* 54 Cal.3d at p. 1027.)

[15]At the change of plea hearing the court referred to "other standard terms of probation." If the court's comment constituted a misadvisement, appellant had a remedy—to move to set aside the plea on this ground. (*In re Moser, supra,* 6 Cal.4th at p. 356.) Lopez has neither. raised this claim nor requested this remedy.

all laws"—is a "standard" condition. (See *People* v. *Hove* (1992) 7 Cal.App.4th 1003, 1005, fn. 6 [9 Cal.Rptr.2d 295].) Condition No. 15 as it will be modified in effect serves as an adjunct to this "standard" condition, for it facilitates Lopez's compliance with the law by foreclosing him from consorting with groups whose primary activity is the commission of felonies and thereby removing him from a source of temptation to violate the law. Considered in connection with this other condition, condition No. 15 did not constitute a punishment significantly greater than Lopez had bargained for. (*People* v. *Walker, supra,* 54 Cal.3d at p. 1026; *People* v. *Olea, supra,* 59 Cal.App.4th at p. 1299.) On this subject, we note that though Lopez objected to condition No. 15 in the trial court, he did not reject, as he could have, the negotiated plea on the ground it contained this condition. (See *People* v. *Torres* (1997) 52 Cal.App.4th 771, 781 [60 Cal.Rptr.2d 803].)

 Furthermore, we believe condition No. 15 was appropriately imposed by the trial court as a "standard" condition of probation. Conditions prohibiting gang related conduct are not new; appellate courts have approved similar conditions, at least as applied to juvenile probation, for at least the past eight years. (*In re Michael D., supra,* 214 Cal.App.3d at p. 1617; *In re Laylah K., supra,* 229 Cal.App.3d at p. 1501.) The federal courts have approved analogous associational restrictions for at least the past 24 years. (*Malone* v. *United States supra*, 502 F.2d at p. 557; *U.S.* v. *Showalter, supra,* 933 F.2d at p. 575.)

In addition, the condition serves a legitimate purpose consistent with the rehabilitative goal of probation. In *Torres,* the court held that the trial court did not abuse its discretion by imposing a period of probation for drug-related offenses and requiring a commitment to a drug treatment facility, and then routinely conditioning probation on a waiver of custody credits for time spent in the facility. (*People* v. *Torres, supra,* 52 Cal.App.4th at p. 782.) The court based this conclusion upon the "gigantic efforts of this state to support productive and effective drug rehabilitation programs," the "wide discretion accorded sentencing judges by section 1203.1," and the "logic" inherent in the proposition that by denying credits the probationer was benefited because he or she was offered not a means by which to "manipulate the system by serving jail time in an ineffectual substance abuse treatment detour" but instead "a greater incentive to succeed in substance abuse treatment and on probation." (*Torres* at p. 776.)

The essence of each of these three elements exist here with respect to the gang condition. First, the "broad discretion" of the trial court extends to all probationary grants. (*People* v. *Carbajal, supra,* 10 Cal.4th at p. 1120.) Second, there can be little dispute about the seriousness of the threat to

social order and public safety presented by criminal gangs; the Legislature has expressly found there is a "crisis" in this state caused by gangs and their individual members who engender fear in and intimidate law-abiding citizens. (§ 186.21.) Third, the point of the grant of probation, to give Lopez the incentive and the means to abandon further criminality, is promoted by provisions, such as condition No. 15, which seek to insulate him from persons, and deter him from conduct, conducive to a resumption of criminality.

Last, we deal with Lopez's claim the condition is a significant deviation from the plea agreement because it would require him to have his gang tattoos removed surgically. We will not read the provision to impose such an unreasonable requirement. (See *People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th at p. 1117.) To the extent the condition can be so construed, the People have stipulated that Lopez need not have his tattoos, existing at the time sentence was imposed, surgically removed. We will modify the condition to so state.

## DISPOSITION

Condition No. 15 is modified to read as follows: "Defendant is not to be involved in or associate with any person known to defendant to be a gang member. He may not wear or possess any item of gang clothing known to be such by defendant including any gang insignia, moniker or pattern, jewelry with gang significance nor may he display any gang insignia, moniker or other markings of gang significance known to be such by defendant on his person or property as may be identified by law enforcement or the probation officer, except that he shall not be required to remove the tattoos on his body that existed at the time of sentencing. For purposes of this paragraph, the word "gang" means a "criminal street gang" as defined in Penal Code section 186.22, subdivisions (e) and (f)."

Except to the extent of this modification to the conditions of probation imposed upon appellant, the judgment is affirmed. The case is remanded to the trial court to reconsider, upon motion by either of the parties, whether the phrase "identified by law enforcement or the probation officer" should remain in condition No. 15.

Harris, J., and Levy, J., concurred.