Filed 10/17/13  P. v. Lyons CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RAPHAEL DENNIS LYONS,<br><br>        Defendant and Appellant. | E054406<br><br>(Super.Ct.Nos. INF10000378 &<br> INF063282)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Edward Forstenzer, Judge.  (Retired judge of the Mono Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Raphael Dennis Lyons appeals following his conviction on multiple counts. He asserts that the trial court erred by failing to hold a *Marsden*[1] hearing in connection with his motion for new trial and that a condition of his probation was unconstitutionally overbroad.

We will affirm the judgment.

<u>PROCEDURAL HISTORY</u>

In case No. INF063282, a complaint filed on September 3, 2008, alleged possession of hydrocodone (Health & Saf. Code, § 11350, subd. (a); count 1); possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2); being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 3); and possession of drug-using paraphernalia (Health & Saf. Code, § 11364; count 4). The crimes charged in counts 1 and 2 are felonies; the crimes charged in counts 3 and 4 are misdemeanors. The complaint alleged that defendant committed counts 1 and 2 while out on bail or on his own recognizance. (Pen. Code, § 12022.1.)

On April 8, 2009, defendant pleaded guilty to all four counts pursuant to a plea agreement. He was placed on probation pursuant to Penal Code section 1210.1

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

2

(Proposition 36) and ordered to enroll in a drug treatment program. The probation in case No. INF063282 was concurrent with the probation ordered in case No. BAF006070.[2]

On February 24, 2010, in conjunction with the felony complaint filed in case No. INF10000378, the district attorney filed a petition to revoke probation in case No. INF063282.

In case No. INF10000378, defendant was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); counts 1, 4, 7); possession of a billy club (Pen. Code, § 12020, subd. (a)(1); count 2); misdemeanor possession of drug-use paraphernalia (Health & Saf. Code, § 11364; count 3); misdemeanor driving under the influence of a drug and alcohol (Veh. Code, § 23152, subd. (a); count 5); and possession of a shank while confined in a penal institution (Pen. Code, § 4502, subd. (a); count 6). The first amended information also alleged two enhancements pursuant to Penal Code section 12022.1, i.e., that certain felonies charged in the information were committed while defendant was free from custody prior to the judgment becoming final on a primary offense.[3]

---

[2] The sentencing minutes dated April 8, 2009, do not accurately reflect the proceedings of that date as they pertain to case No. INF063282. The sentencing minutes state that defendant pleaded guilty to counts 1, 2, and 4, and that count 3 was dismissed. That disposition pertains to case No. BAF006070.

[3] The information appears to allege these enhancements as to counts 4 and 7. However, the allegation attached to count 4 states that the felonies alleged in counts 1 and 2 were committed in violation of Penal Code section 12022.1, while the allegation attached to count 7 states that the felonies alleged in counts 1, 2, 4 and 6 were committed in violation of section 12022.1.

3

In case No. INF10000378, defendant was convicted by a jury on counts 2, 3, 4, 5, and 7. The jury deadlocked on count 1, and it was later dismissed. Defendant waived jury trial on count 6 and was found guilty on that count in a separate court trial. The court also found that defendant had violated his probation in case No. INF063282. In a separate proceeding, the court found the Penal Code section 12022.1 enhancements true.

In case No. INF10000378, defendant was sentenced to a total term of eight years in county jail, consisting of two years of local custody and six years suspended with supervised release. (Pen. Code, § 1170, subd. (h)(5)(B).) The court imposed a concurrent term in case No. INF063282.

Defendant filed timely notices of appeal.

FACTS

Defendant does not raise any issues pertaining to case No. INF063282. Accordingly, we will limit our recitation of the facts to those pertaining to case No. INF10000378.

*Counts 1 Through 3*

On February 9, 2010, officers conducted a probation compliance check of defendant's residence. Officers found a bindle containing 0.22 grams of methamphetamine underneath a mattress in one of the rooms. Officers also found a three-foot wooden billy club and several glass pipes of a type frequently used to ingest controlled substances. After being *Mirandized*,[4] defendant admitted the items were his

---

[4] *Miranda v. Arizona* (1966) 384 U.S. 436.

despite the presence of another person in the residence. He told officers that he had been robbed previously and that he had the billy club for protection.

*Counts 4 and 5*

On February 22, 2010, officers saw defendant speed through an intersection against a red left turn arrow. When the officers stopped defendant, he could not produce his driver's license, insurance card or registration for the car, and he was abnormally fidgety and hyperactive. Officers asked defendant to step out of the car and noticed he had an unsteady gait and slurred speech. Defendant admitted to taking two "hits" of methamphetamine that day. Defendant performed poorly on each of four field sobriety tests and was arrested. During a search incident to the arrest, officers found a bindle in defendant's pocket containing 0.10 grams of methamphetamine. When defendant was booked into jail that night, a deputy sheriff discovered another bindle in defendant's sock containing 0.17 grams of methamphetamine. Defendant's blood tested positive for methamphetamine.

*Count 6*

While in custody at the Indio jail on March 26, 2010, defendant was escorted from a housing unit to a recreation area. As part of the transfer procedure, a deputy conducted a routine search and found in defendant's pocket a "sharpened object" consisting of the handle of a plastic spoon or toothbrush with a razor attached to the end.

After being *Mirandized*, defendant said that he used the item to sharpen his pencil.

*Count 7*

At approximately 4:00 a.m., on November 29, 2010, an officer stopped a car that did not have rear license plate lights. Defendant, who was a passenger in the car, told the officer the car was his and gave him permission to search it. The officer found a briefcase in the backseat containing, among other items, a single white crystal of methamphetamine weighing 0.07 grams. Defendant told the officer that the briefcase and its contents belonged to him.

DISCUSSION

1.

DEFENDANT DID NOT REQUEST A *MARSDEN* HEARING

Defendant filed a motion for new trial, alleging ineffective assistance of trial counsel, Ronny Hettena. The trial court relieved Hettena and appointed James Silva to represent defendant in the new trial motion. At the hearing on the motion, after argument by counsel, defendant asked to be allowed to speak. He argued that his trial attorney, Hettena, had failed to call witnesses and had denied him the opportunity to testify. He then stated that he did not think that his new attorney, Silva, had thoroughly reviewed his cases. He said that he had asked Silva to obtain the transcripts, but that Silva had refused to do so. The court said, "All right. Let me interrupt you for a moment . . . . If you were so intent on testifying, why didn't you say something when the jury was still here?" Defendant responded to this question at length. At the conclusion of defendant's response, the court denied the new trial motion. Defendant did not attempt to raise his dissatisfaction with Silva again. Defendant now contends that the trial court abused its

6

discretion by failing to conduct a *Marsden* hearing based on his statements pertaining to his dissatisfaction with Silva's review of his case in connection with the new trial motion.

In *People v. Marsden*, *supra*, 2 Cal.3d 118, the California Supreme Court held that a defendant who is dissatisfied with the representation provided by appointed counsel has a constitutional right to bring a motion to have the attorney relieved and new counsel appointed. When a criminal defendant seeks substitution of counsel on the ground that appointed counsel is providing inadequate representation, the trial court must give the defendant an opportunity to explain the reasons for the request. (*Id.* at pp. 123-125.) No formal motion is required; however, in order to trigger the trial court's duty to hold a hearing to allow the defendant to express the reasons for his or her dissatisfaction with counsel, "there must be at least some clear indication by [the] defendant that he [or she] wants a substitute attorney" (*People v. Dickey* (2005) 35 Cal.4th 884, 920, internal quotations marks and citations omitted for clarity), or when the defendant "in some manner moves to discharge his [or her] current counsel." (*People v. Lucky* (1988) 45 Cal.3d 259, 281.)

Here, defendant did not state that he wanted a new attorney. It is arguable that by interrupting defendant when he expressed dissatisfaction with Silva's conduct with respect to the new trial motion, the trial court deprived defendant of the opportunity to request new counsel at that point. However, the court did not prevent defendant from returning to his request for new counsel, if that was in fact what he wanted, after the colloquy which followed the trial court's interruption.

During that colloquy, the trial court explained to defendant that if he had wanted to testify, he should have spoken up and so informed the court. In response, referring to discussion on that subject which took place when the court first addressed the new trial motion, defendant said, "I learned that from the last time when you said I should have spoke up before. . . . I didn't know I was supposed to talk before. But now that I know I can talk, that's why I'm talking to you." Since defendant knew he could talk to the court to raise his concerns if they were not being addressed by his attorney, the court's interruption did not prevent defendant from returning to the subject of his dissatisfaction with Silva and asking for new counsel, if that was what he wanted. Moreover, defendant had made at least two prior *Marsden* motions, and he was well aware that if he asked for new counsel, he would get a hearing to air his complaints. Under these circumstances, even if we assume that defendant wanted to replace Silva, he forfeited his right to a *Marsden* hearing by failing to request one explicitly.

2.

## THE RESIDENCE CONDITION FOR SUPERVISED RELEASE DID NOT VIOLATE DEFENDANT'S CONSTITUTIONAL RIGHTS

As a condition of supervised release, defendant agreed to a number of conditions, including that he would "[i]nform the probation officer of [his] place of residence and reside at a residence approved by the probation officer" and that he would "[g]ive written notice to the probation officer 24 hours before changing [his] residence and [would] not move without the approval of the probation officer."

8

Although defendant did not object in the trial court, he now contends that the residence condition is facially overbroad and violates his constitutional privacy and liberty rights. Where a claim that a probation condition is facially overbroad and violates fundamental constitutional rights is based on undisputed facts, it may be treated as a question of law which is not forfeited by failure to raise it in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.)

The issue defendant raises is currently pending on review in the California Supreme Court in *People v. Schaeffer* (2012) 208 Cal.App.4th 1 (Fourth Dist., Div. Two), review granted October 31, 2012, S205260. Although *Schaeffer* cannot be cited as authority, we agree with its reasoning, and we conclude, as we did in *Schaeffer*, that the residence condition is valid because it is narrowly tailored to further the state's interest in defendant's rehabilitation.

"Trial courts have broad discretion to set conditions of probation in order to 'foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1.' [Citations.] . . . [¶] However, the trial court's discretion in setting the conditions of probation is not unbounded." (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624.) A term of probation is invalid if it: "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer,

9

who is "not entitled to the same degree of constitutional protection as other citizens."' [Citation.]" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.) "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored [and] '"reasonably related to the compelling state interest in reformation and rehabilitation . . . ."' [Citations.]" (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942 (*Bauer*).)

Defendant relies upon *Bauer*, *supra*, 211 Cal.App.3d 937, in which the reviewing court struck a residence approval condition, which seemed designed to prevent the defendant from living with his parents because they were overprotective. Nothing in the record suggested that the defendant's home life contributed to the crimes of which he was convicted (false imprisonment and simple assault), or that his home life was reasonably related to future criminality. (*Id*. at p. 944.) The court concluded that the residence approval condition impinged on the right to travel and freedom of association, and was extremely broad since it gave the probation officer the power to forbid defendant from living with or near his parents. (*Ibid*.)

The present case is distinguishable. Defendant pleaded guilty in case No. INF063282 to possessing methamphetamine and hydrocodone, being under the influence of a controlled substance and possession of paraphernalia for drug use. He was convicted in case No. INF10000378 of possession of methamphetamine and driving under the influence of drugs and alcohol, as well as possession of illegal weapons. Defendant acknowledged to the probation officer that he had a long history of drug use. Where defendant lives may directly affect his rehabilitation, in that without any

10

limitations, defendant could choose to live in a residence where drugs are used or sold. Under these circumstances, the state's interest in defendant's rehabilitation is properly served by the residence approval condition.

Furthermore, the legal landscape has changed since *Bauer*, *supra*, 211 Cal.App.3d 937. The Supreme Court stated in *People v. Olguin* (2008) 45 Cal.4th 375 (*Olguin*) that "[a] probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' [Citation.]" (*Id.* at p. 382.) We view the residence approval condition here in light of *Olguin* and presume that a probation officer will not withhold approval for irrational or capricious reasons. (*Id.* at p. 383.)

Moreover, "probation is a privilege and not a right, and . . . adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights—as, for example, when they agree to warrantless search conditions. [Citations.]" (*Olguin*, *supra*, 45 Cal.4th at p. 384.) "If a defendant believes [that] the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence. [Citations.]" (*Id.* at p. 379.)

We conclude that the trial court did not abuse its discretion in imposing the condition that defendant, as a term of his supervised release, reside at a residence approved by the probation officer and not move without the officer's prior approval.

11

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____<br>Acting P. J.

We concur:

RICHLI _____
J.

CODRINGTON _____
J.