Filed 9/24/15  In re Jasmine R.  CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JASMINE R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JASMINE R.,<br><br>        Defendant and Appellant. | A144158<br><br>(Mendocino County Super. Ct. No. SCUK-JDSQ-14-1707201) |

Appellant Jasmine R. appeals after admitting one allegation of petty theft in a juvenile wardship proceeding.  On appeal, appellant contends (1) the juvenile court abused its discretion when it imposed gang conditions of probation, and (2) two of the gang conditions must be modified because they are unconstitutionally vague and overbroad.  We conclude that one of the gang probation conditions must be modified, but shall otherwise affirm the juvenile court's orders.

## PROCEDURAL BACKGROUND

On September 22, 2014, a juvenile wardship petition was filed, pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging that appellant, then age 15, had committed petty theft from a merchant (Pen. Code, §§ 484, subd.

1

(a)/488/490.5—count 1),[1] and had possessed 28.5 grams or less of marijuana at school (Health & Saf. Code, § 11357, subd. (e)—count 2).  On November 13, 2014, an amended petition was filed, alleging that appellant had committed shoplifting (§ 459.5—count 1); petty theft (§§ 484, subd. (a)/488/490.5—count 2); and possession of 28.5 grams or less of marijuana at school (Health & Saf. Code, § 11357, subd. (e)—count 3).

On November 19, 2014, appellant admitted the shoplifting allegation, and the juvenile court dismissed the remaining two allegations.

At the December 4, 2014 dispositional hearing, the juvenile court adjudged appellant a ward of the court and placed her on probation.  Appellant's counsel objected to the probation officer's suggested imposition of gang conditions on the ground that there was no evidence of appellant's involvement with a gang.

On January 20, 2015, following a contested hearing on the reserved issue of whether imposition of gang conditions of probation was appropriate, the juvenile court imposed several such conditions.

On January 27, 2015, appellant filed a notice of appeal from the imposition of the gang probation conditions.

## FACTUAL BACKGROUND

The probation report summarized the offense as follows:  On September 3, 2014, appellant and a friend were shopping at Kohl's Department Store in Ukiah when a loss prevention officer observed them enter the same fitting room holding several bottles of fragrance.  When they exited the fitting room, the friend's purse was larger than when they had entered.  The loss prevention officer contacted both minors in the parking lot, recovered the stolen items, and detained them until police arrived.

The arresting officer told the probation officer that, "during the investigation process [appellant] was defiant and had no remorse.  [Her] mother admitted to [the officer] she has no control of [appellant], and [appellant] does not listen to her."

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

## DISCUSSION

### I.  *Imposition of Gang Probation Conditions*

Appellant contends the juvenile court abused its discretion when it imposed gang conditions of probation.

### A.  *Juvenile Court Background*

In the initial probation report filed on November 19, 2014, the probation officer reported that appellant had said that she "drinks seven to eight beers whenever she can," that she smoked marijuana twice a week, and that she had used methamphetamine in approximately July 2014.  Appellant's mother had reported that, when appellant was at home, she was "a sweet girl who listens," but when with her friends, she stayed out until late at night or did not come home at all.[2]

The probation officer further reported that appellant, who was in the ninth grade, had been discharged from a special high school program after breaking the program's agreement.  Her school attendance had been poor and she had had four "formal incidents" on her school behavioral record since May 2014, two of which resulted in suspensions.  "The incidents involved cursing at the bus driver after being kicked off [the bus] for misconduct, being under the influence of marijuana and possession of marijuana and drug paraphernalia, threats and intimidation, and for insulting another student after being told not to."  Appellant's grade point average for the current school year was 1.92.  The probation officer believed that appellant's behavior was "escalating very quickly," and that her mother had "very little control over her daughter."

On January 20, 2015, the juvenile court held a contested hearing regarding whether to impose gang probation conditions on appellant.  Angelica Contreras, the probation officer assigned to supervise appellant at her high school, testified that she had inspected appellant's cell phone on January 8.  Contreras found photographs that depicted

---

[2] The probation officer described two recent incidents in which appellant's whereabouts were not known for five days in July 2014, and for 17 days from October to November 2014.

red bandanas, red clothing, appellant making a gesture of the number three while wearing pink and blue nail polish, appellant with a blue bandana and blue sweater, and an Oakland Raiders hat. The number three, the color blue, blue bandanas, and Raiders images are known to be associated with the Sureño gang. The color red is associated with the Norteño gang. The Norteños and Sureños are rival gangs.

Contreras also saw photographs of booking logs depicting a known Sureño gang member, Jaime R., and his girlfriend, C.S., following their arrest in January 2015. Appellant had told Contreras that they were her friends, and Contreras believed that may have explained why she was displaying the color blue and the number three in some of her photographs. Appellant told Contreras that she did not need gang terms because "she had friends on both sides."

Other photographs were found on appellant's Facebook page, some of which were over a year old while some were more recent. There were photographs that depicted Raiders images, the color blue, a "California Republic" flag, "which is sometimes associated with the Norteño gang," photographs of appellant wearing red, photographs tinted in red with hand gestures,[3] photographs of appellant's Facebook friends, who had "gang-related profile pictures with the red bandana, red flannel, monikers, gestures." One Facebook friend's gang moniker, for example, was "Speedy Loko Gangsta"; another was "signaling with the 1 and the 4 with the red bandana"; and another had blue bandanas and was making hand gestures. Contreras observed that there were both Sureños and Norteños on appellant's friend list.

Based on the photographs from appellant's cell phone and Facebook account, Contreras believed that appellant had friends that associated with both the Norteño and Sureño gangs. She believed that appellant's current peer group included a known gang member, Jaime R. and his girlfriend, C.S. Contreras was concerned that this evidence

---

[3] Contreras described appellant's hand gesture in one of the photographs as looking like she was making a three, but it also looked like a "W," which did not have gang significance.

4

showed that appellant "could be tippy-toeing in a world that is very dangerous and very scary." Contreras had also seen photographs of and comments about gangs on appellant's phone, which concerned her. Contreras believed appellant was at a stage where she was "exploring these things that glorify the gang lifestyle," and Contreras wanted appellant to have gang terms to deter her from further delving into the gang world.

Appellant testified at the hearing that she was not a gang member. She acknowledged, however, that she had told the probation officer that she had friends or hung out with people who were in gangs. She testified that she did not participate in gang culture, that red and blue were "just a color," that the Raiders were just a football team, that the hand gesture for three meant nothing, and that she had a photograph of the California flag because she was born in California and she liked California. Most of the photographs on her phone were from the previous month. The booking log photographs had been on her phone since January 6, 2015. She had those photographs because she knew Jaime R. and C.S. She acknowledged that a condition of her probation was that she not associate with C.S.

Appellant further testified that the Facebook photograph of her that was tinted red was only red because of the lighting and that the three fingers she had displayed stood for West Side or West Coast because California is on the West Coast. Many of the people on her Facebook friend list were "random people" with whom she did not necessarily associate.

Appellant did not believe she needed gang probation terms because she was not involved in any gangs and had stopped hanging out and talking to people in gangs. She had deleted the questionable photographs from her phone and her Facebook page. On cross-examination, she explained that the picture of her with a blue bandana over her shoulder was "just a color," and "it would be the same as if I got a pink or purple or green bandana."

Appellant's mother, Maria Z., testified at the hearing that, since appellant had been on probation, she was "always with" Maria. As far as Maria knew, appellant was not in a

5

gang and did not participate in any gang activities. She did acknowledge that appellant was "friends with some blue, some red." Although appellant would dress up and wear bandanas, it was just for photographs. She had bandanas of several colors, including purple and green.

Maria Z. testified that, the prior month, appellant had stayed away from home for a few days. She had been with her friend C.S. and admitted that she had smoked marijuana and drunk alcohol during that time. The previous summer, appellant had disappeared first for 5 days and then for 15 days. The first time, she was found with a 20-year-old man and the second time she was with C.S. Maria explained that appellant "didn't want to go by my rules and come home and she kind of just wanted to hang out with her girlfriends and do whatever she wanted to do." In addition, appellant "used to smoke a lot of weed," but she no longer had the desire to smoke or drink.

At the conclusion of the hearing, the juvenile court imposed the following gang probation conditions: "That [appellant] not be a member of, associate with any person that she knows or reasonably should know to be a member of or involved in the activities of a criminal street gang. That she not wear or display items or emblems reasonably known to be associated with or symbolic of gang membership, and that she not acquire any new tattoos or gang-related piercings . . . and that she have . . . existing tattoos or piercings photographed addressed [*sic*] by Probation."[4]

The court explained its decision to impose these terms: "Probation has gathered sufficient evidence to persuade the court that although [appellant] may not be a gang affiliate, she is adopting some of the indicia of gang involvement and choosing to portray herself in that light. And it's not just a matter of whether [appellant] herself has a

---

[4] These standard gang conditions of probation were set forth in the written terms and conditions order as follows: "Not be a member of, or associate with, any person the child knows, or should reasonably know, to be a member of or to be involved in the activities of a criminal street gang membership"; "Not wear or display items or emblems reasonably known to be associated with or symbolic of gang membership"; and "Not acquire any new tattoos or gang-related piercings and have any existing tattoos or piercings photographed as directed by the probation officer."

6

subjective intent to be a gang member. When you publicly post pictures of yourself because you think they look cool or for whatever reason, you're basically advertising to anyone who has access to that type of documentation, that understands gang culture that you support it, that you want to be a part of it, that you idealize it." The court further stated: "I have to say that I did not find [appellant's] testimony very credible. I believe that despite her denials, she knows significantly more about this type of culture and the significance of the various things she's portraying in the pictures than she testified to in court." The court concluded: "[I]t just takes one friend in one moment when maybe you've been drinking or using to persuade you to take that next step to do something really stupid that gets somebody hurt, and the reason that kids are allowed to have gang terms when they're not formal gang members is to simply deter that kind of conduct. And [appellant] is a kid with enough evidence compiled by Probation to convince the court that that's the right step at this juncture."[5]

### B. *Legal Analysis*

"We review conditions of probation for abuse of discretion. [Citations.] Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future

---

[5] After the juvenile court ruled, both the probation officer and the court expressed hope for appellant's future. The probation officer stated that she considered appellant "to be very smart, very intelligent," with "a bright future. She has had inspirations to finish college . . . . I am very positive that [appellant] is going to be successful . . . ." The court also stated that it was "proud of where [appellant is] going."

criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*), quoting *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).)

In *In re Victor L.* (2010) 182 Cal.App.4th 902, 909-910 (*Victor L.*), we explained the special considerations involved in setting juvenile probation conditions: " 'The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents' [citation] thereby occupying a 'unique role . . . in caring for the minor's well-being.' [Citation.] In keeping with this role, [Welfare and Institutions Code] section 730, subdivision (b), provides that the court may impose 'any and all reasonable [probation] conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' [Citation.] Thus, ' " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " ' [Citations.]"

In this case, appellant argues that the gang probation conditions were unreasonable because none of the *Lent* factors apply. (See *Lent*, *supra*, 15 Cal.3d at p. 486.) We need not decide whether the first two factors of the *Lent* test are applicable here because we conclude the gang conditions are reasonably related to the third factor: preventing future criminality. (See *Olguin*, *supra*, 45 Cal.4th at pp. 379-380; *Lent*, at p. 486.) Although the evidence does not show that appellant is currently a member of a gang, it does reveal her association with gang members, which " 'is the first step to involvement in gang activity.' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624 (*Lopez*), quoting *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500-1502 (*Laylah*), disapproved on other grounds in *In re Sade C.* (1996) 13 Cal.4th 952, 962, fn. 2.) Imposition of gang

conditions in such circumstances has " 'been found to be 'reasonably designed to prevent future criminal behavior.' [Citation.]" (*Lopez*, at p. 624.)

In *Laylah*, *supra*, 229 Cal.App.3d at page 1501, the appellate court found that even though the evidence did not conclusively show that the minors were gang members, there was evidence that they were friends with gang members and their history reflected "increasingly undirected behavior." The court therefore concluded that the gang probation conditions imposed by the juvenile court were reasonably designed to prevent future criminal behavior. (*Id.* at p. 1502.) The court explained: "Where a court entertains genuine concerns that the minor is in danger of falling under the influence of a street gang, an order directing a minor to refrain from gang association is a reasonable preventive measure in avoiding future criminality and setting the minor on a productive course. Evidence of current gang membership is not a prerequisite to imposition of conditions designed to steer minors from this destructive path." (*Ibid.*)

Here, the court found that appellant was "adopting some of the indicia of gang involvement and choosing to portray herself in that light," which it believed demonstrated that she was in danger of falling under the influence of a criminal street gang. The evidence in this case does not reflect the same level of gang association present in *Laylah*, in which the minors and two other girls, one of whom was a gang member, attacked a woman apparently for wearing red clothing in rival gang territory. (*Laylah*, *supra*, 229 Cal.App.3d at pp. 1499, 1501.) The evidence does show, nonetheless, that appellant was "in danger of succumbing to gang pressures." (*Id.* at p. 1501.)

The record contains evidence that appellant's cell phone contained photographs from the previous month that depicted gang-related images, including appellant wearing red or blue and making gang signs. There were similar photographs on appellant's Facebook page and there was evidence that appellant was Facebook friends with people who had gang-related profile pictures, although there was no testimony about the recency of the Facebook evidence. Appellant also had booking photographs on her phone for a known Sureño gang member and his girlfriend, both of whom appellant had told the

9

probation officer were her friends. She also told her probation officer that "she had friends on both sides." Appellant's mother denied that appellant participated in any gang activities, but acknowledged that "she's friends with some blue, some red." Although appellant testified that she did not participate in gang culture and that red and blue were "just a color," the juvenile court did not find her testimony credible.

Appellant parses the probation officer's testimony, pointing out that she testified, for example, that she "guess[ed] there appear[ed] to be" photographs showing appellant was Facebook friends with people with gang-related profile pictures, that there was a "slight glimpse" of a blue bandana in a photograph, and that she was unsure if appellant's hand gesture in one photograph indicated a three, which was gang-related, or a "W," which was not. Appellant asserts that this language shows that the probation officer's opinion that appellant "could be tippy-toeing in a world that is very dangerous and very scary" was based on speculation.

Even ignoring both the Facebook photographs and friends list, which may not have been current, and any evidence regarding which the probation officer expressed uncertainty, there is more than enough evidence—including both the photographs on appellant's cell phone and the testimony of the probation officer, appellant, and Maria at the hearing—to support the juvenile court's finding that appellant was friends with gang members and was "adopting some of the indicia of gang involvement and choosing to portray herself in that light." Moreover, that appellant was friends with both Sureños and Norteños does not neutralize the evidence that shows, as the probation officer opined, that appellant was "exploring these things that glorify the gang lifestyle," and that she needed gang terms to deter her from further entering that world.

Appellant's history, which, as in *Laylah*, reflects "increasingly undirected behavior," also supports the imposition of the gang probation conditions. (See *Laylah*, *supra*, 229 Cal.App.3d at p. 1501 [minors were runaways, truants, and out of their parents' control].) The record contains evidence that appellant had been drinking alcohol, smoking marijuana, and had tried methamphetamine. She was regularly staying out all night, including one incident during which she was gone for 5 days and another

10

when she was gone for 17 days. She had been discharged from her high school due to poor attendance and other incidents, including threats and intimidation, cursing at a bus driver, and being under the influence of marijuana. Her current grade point average was 1.92. The probation officer believed that appellant's behavior was "escalating very quickly" and that her mother had very little control over her.

Then, approximately two weeks after being placed on probation in this case, appellant admitted five probation violations, including that she had violated her curfew, that she was away for four days and her mother did not know where she was, that she did not attend school for one day, that she had smoked marijuana, and that she had drunk alcohol.[6]

The totality of the evidence demonstrates that the juvenile court's concerns warranted the imposition of gang conditions as "a reasonable preventive measure in avoiding future criminality and setting [appellant] on a productive course." (*Laylah*, *supra*, 229 Cal.App.3d at p. 1502, see *Olguin*, *supra*, 45 Cal.4th at pp. 379-380; *Lent*,

---

[6] Appellant states that neither the prosecutor nor the probation officer cited her history of behavioral problems as a reason for imposing gang conditions and the juvenile court did not rely on it in making its determination. She argues that we should therefore disregard respondent's argument based on her history since the argument amounts to a new theory, which may not be raised on appeal. (See, e.g., *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

Evidence regarding appellant's history of problematic behavior was presented both in the probation officer's report and at the hearing on whether to impose the gang conditions, and was intertwined with concerns about appellant's gang involvement. At the hearing, the prosecutor mentioned, for example, concerns about appellant and her friends' alcohol and drug use, and appellant's mother, Maria Z., testified about appellant's substance use, as well as her failure to abide by mother's rules and her repeated disappearances from home. The juvenile court presumably considered this evidence and argument in making its ruling. (See *In re Walter P.* (2009) 170 Cal.App.4th 95, 100 [in fashioning conditions of probation, court shall consider not only circumstances of current offense, but minor's entire social history].) But even if it did not do so, "[w]e are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

*supra*, 15 Cal.3d at p. 486.)[7]  There was no abuse of discretion.  (See *Olguin*, at p. 379; *Lent*, at p. 486.)

## II. *Modification of Gang Probation Conditions*

Appellant contends two of the gang conditions of probation must be modified because they are unconstitutionally vague and overbroad.

Although appellant did not object to the gang probation conditions on this ground in the juvenile court, such a challenge is not forfeited if "the error is one that is 'capable of correction without reference to the particular sentencing record developed in the trial court.' [Citation.]  In [this] circumstance, such a claim may 'present a pure question of law' properly addressed on appeal, even if there was no objection below.  [Citation.]" (*In re Luis F.* (2009) 177 Cal.App.4th 176, 181, quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 890.)  Because appellant's challenge presents a pure question of law, we will address it now.

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]  A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated

---

[7] Appellant asserts that "the imposition of gang probation conditions can result in a minor being branded as a gang member and potentially lead to them being charged in the future with a gang enhancement or substantive gang offense."  She cites two cases for this proposition, neither of which supports her claim.  (See *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1364 [defendant's previous gang involvement and commission of violent robbery with current gang members was not sufficient to show that section 186.22, subdivision (b) (gang enhancement statute) applied]; *People v. Martinez* (2004) 116 Cal.App.4th 753, 762 [agreeing that a defendant's "personal affiliations and criminal record are [not] without consequence in finding a 'gang related' crime within the meaning of section 186.30," but reversing imposition of gang offender registration requirement where there was no showing that appellant's crime was intended to benefit anyone other than himself].)  These cases make clear that mere known association with gang members is not sufficient to bring a defendant within the ambit of sections 186.22 or 186.30.

12

as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890; accord, *Victor L.*, *supra*, 182 Cal.App.4th at p. 913 [due process "requires that the probationer be informed *in advance* whether his conduct comports with or violates a condition of probation"].)

### A.

The first probation condition appellant challenges provides: "That [appellant] not be a member of [or] associate with any person that she knows or reasonably should know to be a member of or involved in the activities of a criminal street gang." Appellant argues that the second part of this condition should be modified to provide that she not be "involved *in activities that she knows to be* the activities of a criminal street gang." (Italics added.) Appellant also claims that it is necessary to add a reference to subdivisions (e) of section 186.22, which defines criminal street gangs and their activities. (See *Lopez*, *supra*, 66 Cal.App.4th at p. 638 [adding to gang probation conditions, "For purposes of this paragraph, the word 'gang' means a 'criminal street gang' as defined in . . . section 186.22, subdivisions (e) and (f)"].)

Although respondent agrees with both of appellant's suggested changes, we conclude the language of this probation condition need not be changed. The parties have misinterpreted the phrase, "be involved in the activities of a criminal street gang," as applying directly to *appellant's* involvement. Instead, the condition, read properly, plainly prohibits appellant from associating with any person she knows or reasonably should know is either a member of a gang or involved in the activities of a gang. Despite the parties' misreading, we do not believe that the meaning of this condition is unclear and needs modification since it already contains a personal knowledge requirement: appellant is prohibited from associating with a person who is a gang member or who is involved in gang activities only *if she knows or reasonably should know* that the person is in fact a gang member *or* is involved in the activities of a criminal street gang. (Compare *Victor L.*, *supra*, 182 Cal.App.4th at pp. 931-932 [modifying probation condition to preclude a minor from, inter alia, being " 'in any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity' "];

13

*People v. Leon* (181 Cal.App.4th 943, 952 [modifying probation condition to preclude defendant from visiting or remaining in any location "which you know to be or which the probation officer informs you" is an area of gang-related activity].)

Nor do we agree that this condition must be modified to clarify the meaning of the words, "criminal street gang," the meaning of which is "fairly implied in the condition." (*In re Justin S.* (2001) 93 Cal.App.4th 811, 816, fn. 3.)

**B.**

The second probation condition challenged by appellant provides: "That [appellant] not wear or display items or emblems reasonably known to be associated with or symbolic of gang membership." Appellant argues that this condition should be modified to provide a personal knowledge requirement in place of the words "reasonably known." (See *In re H.C.* (2009) 175 Cal.App.4th 1067, 1071-1072 [finding that similar use of word "known" in passive voice left unclear identity of person who had knowledge; court changed condition to read "known to you"].)

Respondent does not oppose this change, and further suggests including the phrase, " 'or that the Probation Officer informs [you] to be.' " (See *In re Shaun B.* (2010) 188 Cal.App.4th 1129, 1145 [modifying similar condition to include phrase, "or that the Probation Officer informs him to be"].)

We agree that this condition should be modified to include a personal knowledge requirement and to add respondent's suggested language regarding the probation officer. Appellant does not believe that this condition should include the language "or that the probation informs her to be" because neither the probation officer nor the juvenile court evinced an intention to add such a clause. The passive voice of the original condition, however, does not make clear to whom the condition is expected to be known—appellant or the probation officer or both. In addition, it is particularly reasonable to include this language in light of appellant's hearing testimony in which she denied that blue and red clothing, including bandanas, were associated with or symbolic of gang affiliation.

14

The challenged condition shall be modified to read: "The minor shall not wear or display items or emblems reasonably known to her to be, or that the probation officer informs her to be, associated with or symbolic of gang membership."[8]

## DISPOSITION

The challenged gang condition of probation discussed in part II.B., *ante*, is modified as set forth in the body of this opinion. In all other respects, the juvenile court's orders are affirmed.

---

[8] This case is distinguishable from *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1357-1358, cited by appellant, in which the appellate court refused to modify a probation condition to prohibit an adult defendant from being present with any person " 'known to [you] to be disapproved by [your] probation officer,' " because the condition placed "no limits on those persons whom the probation officer may prohibit defendant from associating with" and, in particular did "not identify the class of persons with whom defendant may not associate nor does it provide any guideline as to those with whom the probation department may forbid association." (*Ibid.*) The court noted that it was dealing "solely with the conditions of adult probation" and that "[c]onditions of juvenile probation may confer broader authority on the juvenile probation officer than is true in the case of adults." (*Id.* at p. 1358, fn. 4.) Here, we are dealing with juvenile probation conditions and, moreover, the condition *does* identify the particular "items or emblems" that the probation officer may preclude appellant from displaying: only those "associated with or symbolic of gang membership."

                                           _____

                                           Kline, P.J.

We concur:


_____

Richman, J.


_____

Stewart, J.


*In re Jasmine R.* (A144158)

16