Filed 1/25/16  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HECTOR SALVADOR LOPEZ,<br><br>    Defendant and Appellant. | H041713<br>(Santa Clara County<br>Super. Ct. No. C1486909) |

Defendant Hector Salvador Lopez was sentenced to a three-year "blended sentence" under Penal Code[1] section 1170, subdivision (h)(5)(B) after he pleaded no contest to a count of vehicle theft with a similar prior conviction (Veh. Code, § 10851, subd. (a); § 666.5) and buying or receiving a stolen vehicle with a similar prior conviction (§§ 496d, 666.5).  On appeal, he challenges two of the imposed probation conditions.  First, he argues that the probation condition requiring him to give his probation officer passwords to any "social media sites" is unreasonable and unconstitutionally vague.  Second, he claims the probation condition prohibiting him from being 50 feet away from a school campus is unreasonable.  We reject defendant's arguments and affirm the order granting probation.

**BACKGROUND**

On July 24, 2014, defendant was charged by information with vehicle theft with a prior similar conviction (Veh. Code, § 10851, subd. (a); § 666.5) and receiving a stolen

---

[1] Unspecified statutory references are to the Penal Code.

vehicle with a prior similar conviction (§§ 496d, 666.5). It was also alleged that defendant had served a prior prison term within the meaning of section 667.5, subdivision (b).

On September 15, 2014, defendant pleaded no contest to the vehicle theft with a prior conviction charge and admitted he had served a prior prison term. On November 21, 2014, the court sentenced defendant to a three-year "blended" sentence under section 1170, subdivision (h)(5)(B), meaning that defendant would serve two years of his sentence in county jail and one year of his sentence on mandatory supervision. The trial court suspended imposition of the sentence for the receiving a stolen vehicle count and struck the prior prison enhancement.

During the sentencing hearing, the court heard argument from the parties regarding the appropriateness of certain probation conditions. According to the probation report, defendant had admitted just a few months prior to this current arrest that he was a member of the Sureno criminal street gang. There was no evidence that his current offense was gang related.

Nonetheless, the probation officer recommended imposing standard gang probation conditions based on his recent admission of gang affiliation. The trial court adopted the probation report's recommendations and imposed a standard set of gang-related probation conditions. This included a condition that he "provide [his probation officer with] all passwords to any social media sites, including but not limited to Facebook, Instagram, MocoSpace, MySpace, or anything similar. And shall submit said sites to search at any time with or without a warrant by a peace officer." And, a condition that he "not knowingly be on or within 50 feet of any school campus during school hours unless he is enrolled or with prior permission of the school administrator or probation." Defendant objected to both of these conditions on the basis that they were

2

unreasonable. He also objected to the condition referencing social media sites on the basis that the condition was unconstitutionally vague and overbroad.

DISCUSSION

1. *Passwords to Social Media Web Sites*

   a. **Vagueness**

We first address defendant's argument that the probation condition requiring him to give his probation officer passwords to any "social media sites" is unconstitutionally vague. For the reasons set forth below, our analysis compels us to conclude that it is not.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) Our examination of the challenged condition is "guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Ibid.*) In sum, the probation condition must be " 'sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Ibid.*)

On appeal, we review the constitutionality of a probation condition de novo. (*Sheena K.*, *supra*, 40 Cal.4th at pp. 888-889; *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Defendant argues that the term "social media site" is vague, because it has "neither a clear legal definition or any obvious contours in common sense." Defendant maintains that, for example, certain Web sites like Facebook are commonly accepted as a social media site. However, he claims that due to the inherent ambiguity in the term "social

3

media site," it is unclear whether other, less typical Web sites would be considered a "social media site." In support of this argument, defendant brings up the example of a newspaper Web site where individuals are able to create accounts and comment on news stories. These Web sites involve a degree of social interaction with other users, and is a way for users to share and promote content with each other. Defendant insists that it is unclear whether these Web sites would be considered social media sites under the imposed condition.

The People disagree, arguing that the term "social media site" is not vague. First, the People maintain that defendant can always ask his probation officer for clarification. We reject this argument. Accepting this contention would mean that in all situations where a probation condition suffers from ambiguity, the problem could be remedied by asking a probation officer for clarification. However, the central element of a void for vagueness claim is that the probation condition is not *sufficiently precise* for the probationers to know what is expected of them. If probationers must resort to asking probation officers for clarification regarding the terms of probation, it follows that the condition does not pass constitutional muster.

We find more merit to the People's argument that any vagueness is ameliorated by the condition's illustrative examples of social media sites, such as Facebook, Instagram, MocoSpace, and MySpace. Additionally, the People point out that the condition's purpose—to prohibit defendant from engaging in unlawful online conduct or associating with gang members through social media sites—lends the needed clarity.

In certain cases, appellate courts have concluded that illustrative examples and the trial court's reason for imposing the probation condition can cure a probation condition's vagueness problem. This is based on the general concept that " 'abstract legal commands must be applied in a specific *context*. A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless

4

language a constitutionally sufficient concreteness.' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630 (*Lopez*).)

For example, in *In re Malik J.* (2015) 240 Cal.App.4th 896 the appellate court considered whether a probation condition requiring the minor to " 'provide all passwords to any electronic devices, including cell phones, computers or [notepads], within [the probationer's] custody or control' " was unconstitutionally vague or overbroad. (*Id.* at p. 900.) The minor appealed, arguing that the phrase " 'any electronic devices' " could be interpreted to include Kindles, Playstations, iPods, the codes to his car, home security system, or even his ATM card. (*Id.* at p. 904.) However, the appellate court concluded that the imposed search condition was in response to the trial court's concern that the minor would use items such as his cell phone to coordinate with other offenders. Additionally, the minor had previously robbed people of their iPhones. (*Id.* at pp. 904-905.) Therefore, the appellate court concluded that it was reasonably clear that the condition was meant to encompass " 'similar electronic devices within [minor's] custody and control that might be stolen property, and not, as [minor] conjectures, to authorize a search of his Kindle to see what books he is reading or require him to turn over his ATM password.' " (*Id.* at p. 905.)

Like the court in *Malik J.*, the court here provided context by listing certain examples of social media sites covered by the probation condition, including Facebook, Instagram, Myspace, Mocospace, or anything similar. Further, the probation condition was imposed as part of a standard set of gang orders. Accordingly, the condition's purpose—to deter criminal activities associated with gangs and to prevent future criminality by disassociating defendant from other gang members—provides guidance to the probationer and clarifies which "social media sites" the condition intends to target.

Defendant maintains that the term "social media sites" remains ambiguous on its face. We agree with defendant's assessment that at first blush the definition of the term

5

"social media" appears murky, because it lacks a clear definition in California law. Our Legislature has attempted to define the term "social media" in other codes, but the crafted definitions have been sweeping. For example, in a footnote in their reply brief, the People point out that the term "social media" has been defined in the Education Code as "an electronic service or account, or electronic content, including, but not limited to, videos or still photographs, blogs, video blogs, podcasts, instant and text messages, email, online services or accounts, or Internet Web site profiles or locations." (Educ. Code, § 99120.)[2] A similar definition is also found in Labor Code section 980, subdivision (a).[3]

The People do not attempt to argue that these definitions apply to defendant's probation condition. Nor do we believe application of this definition is appropriate, since the broad definitions found in the Education Code and Labor Code, which include "online services or accounts" or "Internet Web site profiles or locations," would encompass almost anything that can be found on the Internet, including online bank accounts and e-mail accounts. This definition likely encompasses a larger swath of defendant's online presence that the probation condition did not intend to reach.

However, a practical, acceptable, and common-sense definition of the term does exist. And that is what the condition needs in order to pass constitutional muster. According to the Oxford English Dictionary, "social media" constitutes "websites and applications which enable users to create and share content or to participate in social networking." (Oxford English Dict. Online (2016) <http://www.oed.com> [as of Jan. 25, 2016].) In turn, "social networking" is defined as "the use or establishment of social networks or connections; (now *esp.*) the use of websites which enable users to

---

[2] This definition of social media in the Education Code is utilized in a chapter involving privacy rights of students.

[3] Similarly, this definition of social media in the Labor Code is utilized in a chapter involving privacy rights of employees.

interact with one another, find and contact people with common interest, etc." (Oxford English Dict. Online (2016) <http://www.oed.com> [as of Jan. 25, 2016].) And, "social network" is defined as "a system of social interactions and relationships; a group of people who are socially connected to one another; (now also) a social networking website; the users of such a website collectively." (Oxford English Dict. Online (2016) <http://www.oed.com> [as of Jan. 25, 2016].)

We are guided by the general principles that the language used in a probation condition must only have " ' "*reasonable* specificity," ' " not " 'mathematical certainty.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) And, a probation condition is sufficiently specific " ' "if any reasonable and practical consideration can be given its language or if its terms may be made reasonably certain by reference to other definable sources." ' " (*Lopez*, *supra*, 66 Cal.App.4th at p. 630.)

Here, the term "social media," although not mathematically precise, has a reasonably certain definition: Web sites where users are able to share and generate content, and find and connect with other users of common interests. And, the term was made sufficiently specific by the trial court when it clarified that the probation condition covered social media sites including Facebook, Instagram, Myspace, Mocospace, or anything similar. Accordingly, for the aforementioned reasons, we do not find that the term "social media sites" to be unconstitutionally vague and reject defendant's conjecture that the condition could be interpreted to include news Web sites.

Lastly, defendant posits that the condition is also vague because it covers social media "sites." Defendant claims that it is unclear whether, based on this language, social media applications (i.e., applications that only have an interface accessible on a cell phone or tablet device) that do not have a Web site component would be covered by the probation condition. We disagree that the condition is vague in this regard. Although the term references "sites," we believe it is reasonably clear that the probation condition

7

intends to include all social media that has an *online* component. Read this way, there is no vagueness in the condition's use of the term "sites."

b. **Overbreadth**

Next, we address defendant's argument that the challenged condition is constitutionally overbroad. A separate panel from this court rejected the same argument in *People v. Ebertowski* (2014) 228 Cal.App.4th 1170 (*Ebertowski*).

In *Ebertwoski*, the defendant was a member of a criminal street gang who promoted his gang on social media. This court concluded that "[d]efendant's constitutional privacy rights are not improperly abridged by the password conditions any more than they are by the search condition." (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1176.) "Even where there is '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct constituting a serious invasion of the privacy interest,' the constitutional right to privacy is not violated if 'the invasion of the privacy interest is justified because it substantially furthers one or more legitimate competing or countervailing privacy or non-privacy interests.' " (*Ibid.*) Accordingly, *Ebertowski* held that the state's interest in preventing the defendant from continuing to associate with gangs and participate in gang activities outweighed the minimal invasion of his privacy. (*Ibid.*)

We follow the reasoning set forth in *Ebertowski* and conclude that the challenged condition is not constitutionally overbroad.

c. **Reasonableness**

Lastly, defendant argues that the passwords condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). We disagree.

Under *Lent*, a condition is "invalid [if] it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future

criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)

Here, we find that the first two prongs of the *Lent* test are satisfied. The passwords condition has no relationship to the crime of which defendant was convicted, because there is nothing in the record to suggest that social media played a role in his offense. Further, contrary to the People's claims, the passwords condition relates to conduct that by itself is *not* criminal. The People insist that it relates to conduct that is criminal, because social media can be the instrumentality of a crime and can facilitate threats to victims and violate stay-away and protective orders. We disagree. There is nothing inherently illegal about maintaining or accessing social media sites.

At issue is the last prong of the *Lent* test, whether the condition requires or forbids conduct that is not reasonably related to future criminality. Defendant argues that the condition is not reasonably related to future criminality, because there is nothing in the record to suggest that his crime was, in any way, connected to social media. The People disagree, contending that the condition will deter defendant from committing future criminal acts and will facilitate supervision by allowing law enforcement the ability to inspect his communications over social media.

In *In re Erica R.* (2015) 240 Cal.App.4th 907 (*Erica R.*), the appellate court considered a similar juvenile probation condition requiring the juvenile to turn over her electronic devices and provide her electronic passwords to her probation officer. (*Id.* at pp. 910-911.) The juvenile contended that the electronics search condition was invalid, because it had no relation to the juvenile's crime of misdemeanor ecstasy possession, use of electronics devices and social media is not itself criminal, and the record did not support a conclusion that the electronics search condition as reasonably related to future criminality. (*Id.* at pp. 912-913.) The *Erica R.* court noted that the juvenile court had

9

"justified the electronic search condition solely by reference to its experience that 'many juveniles, many minors, who are involved in drugs tend to post information about themselves and drug usage.' " (*Id.* at p. 913.)

The court, however, noted that " '[n]ot every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable.' " (*Erica R.*, *supra*, 240 Cal.App.4th at p. 913.) "Accordingly, '[b]ecause there is nothing in [the juvenile's] past or current offenses or [her] personal history that demonstrates a predisposition' to utilize electronic devices or social media in connection with criminal activity, 'there is no reason to believe the current restriction will serve the rehabilitative function of precluding [the juvenile] from any future criminal acts.' " (*Ibid.*)

At least one other court has agreed with the rationale set forth in *Erica R.*, *In re J.B.* (2015) 242 Cal.App.4th 749. Other courts, however, have disagreed with *Erica R.* In *In re Ricardo P.* (2015) 241 Cal.App.4th 676 (*Ricardo P.*), the appellate court concluded that the same probation condition was reasonably imposed on a minor, even though the minor's offense was not related to electronics. The *Ricardo P.* court noted that our Supreme Court held in *Olguin*, *supra*, 45 Cal.4th 375 that a probation condition requiring a defendant to notify his probation officer of any pets in his residence was reasonable under *Lent*, even though the challenged condition had no relationship to the defendant's crime of driving under the influence of alcohol. (*Id.* at pp. 379-381.) *Olguin* concluded that the probation condition would help protect the safety of the probation officer who is required to supervise the probationer to make unscheduled visits and conduct unannounced searches, which would deter future criminality. (*Id.* at pp. 380-381.)

*Ricardo P.* concluded that under the rationale set forth in *Olguin*, the electronics search condition was reasonable under *Lent*, because it enabled the effective supervision

10

of the minor's compliance with other probation conditions. (*Ricardo P.*, *supra*, 241 Cal.App.4th at pp. 686-687.) The reasoning set forth in *Ricardo P.* was subsequently adopted by another division of the First Appellate District in *In re Patrick F.* (2015) 242 Cal.App.4th 104.

However, defendant's situation is inapposite from the factual scenarios contemplated in the aforementioned cases. First, the *Erica R.* line of cases involve minors, not adult probationers. " ' "[J]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation." ' " (*Erica R.*, *supra*, 240 Cal.App.4th at p. 914.) Minors cannot refuse probation and therefore cannot refuse a particular probation condition. (*Ibid.*) And, courts have long recognized that minors cannot be subjected to an automatic search condition, and a minor's search condition must be tailored to the particular circumstances of the case and the minor. (*Ibid.*)

Second, although the term does not expressly reference "gangs," it was imposed on defendant as part of a standard set of gang-related probation conditions. Accordingly, we find that *Lopez*, *supra*, 66 Cal.App.4th 615 is instructive. In *Lopez*, the defendant was an admitted gang member and had engaged in criminal activities earlier with a codefendant which could be rationally inferred as gang-related. However, the defendant's current offense was not gang related and there was no evidence that he was wearing any gang clothing when arrested. When granting probation, the court imposed a set of gang conditions, and the defendant objected. (*Id.* at p. 623.) On appeal, the court concluded that "[e]ven if the evidence was insufficient to show that the present crime was in some manner gang related, Lopez's age, gang affiliation, and consistent and increasing pattern of criminal behavior warranted a conclusion by the trial court that Lopez's disassociation from gang-connected activities was an essential element of any

11

probationary effort at rehabilitation because it would insulate him from a source of temptation to continue to pursue a criminal lifestyle." (*Id.* at p. 626.)

According to the probation report, defendant had admitted he was a Sureno gang member just a few months before he was arrested for this current offense. Based on his history of gang affiliation, it was sensible for the court to conclude that imposing a gang-related probation condition requiring him to turn over his social media passwords was reasonably related to future criminality. Allowing the probation officer to have access to his social media accounts will facilitate defendant's supervision and can deter future criminality by disassociating defendant from other gang members. Accordingly, we do not find defendant's probation condition to be unreasonable under *Lent*.

2. *Probation Condition Requiring Defendant to Stay Away from Schools*

Next, defendant challenges the probation condition that mandates that he stay at least 50 feet away from a school unless he is enrolled in the school or has permission from a school administrator. Defendant argues the condition fails the test articulated in *Lent*, *supra*, 15 Cal.3d 481.

As we previously described, *Lent* held that "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct that is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

It is undisputed that the condition has no relationship to defendant's crimes. There is no indication his crime was done near or on any school campus. It is also undisputed that the conduct prohibited by the condition is not itself criminal, because it is not unlawful for defendant to be near a school campus. What *is* disputed is the last element described in *Lent*: whether the condition is reasonably related to future criminality. Again, defendant insists that the condition was imposed as part of a standard set of gang

12

conditions, but his current conviction is not gang related. Therefore, he argues that the condition is not reasonably related to future criminality.

However, we again find *Lopez*, *supra*, 66 Cal.App.4th 615 to be instructive. As we previously discussed, defendant had admitted he was a Sureno gang member just a few months before his current offense. Based on his history of gang affiliation, it was sensible for the court to conclude that imposing restrictions on defendant's ability to be close to a school campus was related to future criminality. Further, defendant was 21 years old at the time of sentencing, and the probation report indicated that he had previously been on juvenile probation where gang orders were similarly ordered. Therefore, the condition can logically assist defendant's rehabilitation by requiring him to disassociate from gang members or associates that are still in school.

Defendant, however, maintains that the condition is not reasonable. He expressly concedes that a probation condition prohibiting his *presence* on a school campus is permissible. (*In re D.G.* (2010) 187 Cal.App.4th 47, 56-57 [noting that § 627.2 prohibits entering or remaining on school grounds during school hours without registering with the principal].) Nonetheless, defendant maintains that the condition unreasonably specifies that he must stay at least 50 feet away from a school. He insists that this condition places an arbitrary perimeter around a school that is not reasonably related to future criminality.

We disagree. A gang condition that restricts a probationer from being close to school campuses is aimed at deterring him or her from continuing gang associations and preventing gang-related crimes. The distance that defendant is required to stay away, 50 feet, would prevent him from being in the proximity of school grounds where students often congregate, enter, and exit the campus. Therefore, requiring defendant to stay at least 50 feet away from schools would help prevent him from gathering with students who are gang members.

13

Accordingly, we find that the inclusion of the school stay-away condition was reasonable.  It promotes defendant's rehabilitation and public safety by forbidding him from engaging in conduct that is reasonably related to future criminality.  (*Lent*, *supra*, 15 Cal.3d at p. 486; § 1203.1.)

## DISPOSITION

The order granting probation is affirmed.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Márquez, J.