Filed 10/5/20  P. v. Maciel CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERARDO GOMEZ MACIEL,<br><br>    Defendant and Appellant. | A156361<br><br>(Solano County<br> Super. Ct. No. FCR321232) |

Gerardo Gomez Maciel appeals his sentence to a term of five years' probation for committing a lewd and lascivious act upon a child under the age of 14.  (Pen. Code,[1] § 288, subd. (a).)  He alleges the trial court abused its discretion by imposing a probation condition preventing him from being near all minors, except for his own children.  Under the test set forth in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), Gomez argues that this condition is so draconian that it violates his due process rights.  The condition cannot pass muster under *Lent*, he contends, because it is not reasonably related either to his offense or to any possible future criminality.  We disagree.

---

[1] All further statutory references are to the Penal Code.

1

# I. BACKGROUND

Gomez[2] lived with his wife and three children in a home located in Fairfield. One of the residents in the neighborhood was A.D.,[3] a minor who lived across the street from Gomez. When A.D. was in the fourth and fifth grades, Gomez's wife would occasionally babysit her and her younger sisters. Gomez would also sometimes be present. A.D.'s mother trusted the Gomez family to take care of her children while she was gone.

But on April 21, 2016, A.D. approached her mother, shaking, and saying she had something to tell her. She said she was scared to go outside because Gomez was there. She told her mother about multiple occasions where Gomez had touched her in intimate places. He would touch her on the breast or below the waist, making skin-to-skin contact above the waist but touching her below the waist over her clothes. He would do this out of his wife's sight, usually in the living room, and once in his own room. The incidents occurred for almost two years, until a few weeks before A.D. decided to tell her mother. Up until then, she had only ever told one other person about the incidents: her friend C.M., another minor girl living across the street. A.D.'s mother, shocked and confused at her daughter's revelation, chose to wait a day before calling the police.

On April 23, 2016, the police came to the neighborhood and arrested Gomez. Officer Pedro Arroyo took the lead detective role in conducting

---

[2] Appellant identified himself as "Gerardo Gomez" at trial, and official court documents list his name under various aliases. For the sake of consistency with the trial court, we will refer to him as Gomez throughout this opinion.

[3] We refer to A.D. and later C.M. and Y.F. by their initials only in order to protect their identities as minors.

witness interviews. C.M. revealed in her interview that she herself had an incident with Gomez. She claimed that on an afternoon in August of 2015, she was outside with Gomez's daughter Y.F. when Gomez came over. They talked, then began "play fighting," during which Gomez touched her on the breast. C.M. then backed away towards a wall, and Gomez put his hand on her butt. She told her father about this incident but chose not to report it to the police. It was only after A.D.'s own report, C.M. claimed, that she chose to come forward with her story.

Both girls' reports formed the basis for the charges against Gomez. For the incidents with A.D., he was charged with one count of continuous sexual abuse by engaging in three or more lewd and lascivious acts with a minor under the age of 14. (§ 288.5, subd. (a).) And for the incident with C.M., he was charged with one count of engaging in lewd and lascivious acts with a minor under the age of 14. (§ 288, subd. (a).) He pled not guilty to both charges.

Gomez's version of these events at trial differed markedly. He maintained in his testimony that he would never harm a child, and that he had never touched any child in a sexual manner. The only incidents where he had touched A.D., he claimed, were completely accidental. He testified that he had once accidentally touched her on the breast when he tried to give her a high five but missed. There was also another time where he touched A.D.'s breast when he was lifting her up onto a four-foot slide in the yard.

Gomez then went on to deny that the incident with C.M. ever happened at all. He instead claims he came home one evening to find his daughter Y.F. crying. She told him that her friend, C.M., had cursed at her. Gomez spotted C.M. approaching the house from his window and went outside to confront her. He told her that "if she was coming over to curse, that she should go

3

home, that she should leave, that she should go to hell." Gomez claimed he never touched her during this exchange, and that the two had never spoken since. Y.F. also testified at trial and corroborated this version of events.

In his defense case, Gomez called several witnesses to address his character and reputation. His adult daughter Crystal, cousin-in-law Lisbeth Montano, and former colleague Humberto Navarro all testified, claiming that at all the family gatherings and events they had attended, they had never seen Gomez do anything sexually inappropriate to any child.[4]

After deliberating for a full day, on August 27, 2018, the jury found Gomez not guilty of the principal charges in both Counts 1 and 2. But as to Count 1, it found him guilty of the lesser included offense of engaging in a lewd and lascivious act with A.D. in violation of section 288, subdivision (a).

One month before his sentencing hearing, psychologist Kathleen O'Meara, Ph.D., conducted an evaluation on whether probation would be suitable for Gomez. Gomez insisted during the interview he had only touched A.D. accidentally, and expressed great remorse for his actions. He further stated he needed to "avoid kids" in order to prevent such an "accident" from recurring. Dr. O'Meara's report indicated that beyond mild anxiety and depression, Gomez showed no signs of "major mental disorder or cognitive impairment." She concluded that despite Gomez's likely minimization of his involvement, he did not show signs of pedophilia, and could be safely managed if he was given probation and required to attend sex offender treatment.

---

[4] Prior to sentencing, dozens of family members, friends, and associates wrote letters to the same effect.

On the other hand, the probation officer who filed a presentence report for Gomez's case concluded that despite being statutorily eligible for probation, he did not seem appropriate for probation. He stressed that Gomez violated his position of trust, and that he still posed a potential threat to his own biological children. He further agreed Gomez had minimized his behavior when questioned by the police and Dr. O'Meara. These factors, the officer argued, would suggest a more appropriate sentence of six years in prison in order to protect Gomez's family, A.D. and her family, and the community at large.

At the sentencing hearing, the trial court noted Gomez's case was "difficult," but stated it would grant him probation and suspend his sentence for five years. As tentatively outlined, the probation conditions included one year in county jail, attending sex offender counselling, and not contacting A.D. or her family.

The prosecution requested an additional condition requiring Gomez not to be in the presence of anyone under 18, a condition commonly referred to as a "stay-away order." The defense agreed to a stay-away order, but stipulated that because there was no evidence of an intrafamilial problem, it should exclude all family members to allow Gomez to live with his children and attend family gatherings.

As to the stay-away order, ultimately the trial court chose something of a compromise between these competing positions, and barred Gomez from being in the presence of or attempting to contact anyone under the age of 18, excluding his own children, but including any other family members. He was also barred from going to or loitering near areas frequented by children. When asked on the record, Gomez agreed to all the terms of his probation.

This appeal followed.

5

## II.  DISCUSSION

The sole dispute on appeal is whether the trial court abused its discretion by including relatives in Gomez's stay-away order.  Courts generally have broad discretion in imposing probation conditions "to the end that justice may be done." (§ 1203.1, subd. (j).)  But they can abuse such discretion if they exercise it in an " ' "arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice." ' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390, citing *People v. Carrington* (2009) 47 Cal.4th 145, 195.)

In evaluating whether a challenged probation condition comports with due process, we apply the familiar three-prong test enunciated by our Supreme Court in *Lent, supra,* 15 Cal.3d 481:  (1) Is there is a relationship between the crime the offender was convicted of and the condition?  (2) Does the condition regulate conduct which is not in itself criminal?  (3) Does the condition require or forbid conduct not reasonably related to future criminality? (*Id.* at p. 486.)  All three prongs must be satisfied to invalidate a probation condition.  (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118; *People v. Olguin* (2008) 45 Cal.4th 375, 379.)

Gomez focuses chiefly upon the first and third prongs.  Preventing him from associating with relatives goes too far and is not reasonably related to either his conviction or possible future criminality, he argues.  We disagree. A probation condition that goes beyond the scope of the original offense can still be reasonably related to either the crime or future criminality; it must, however, be designed to serve the same rehabilitative purposes. (*People v. Moran* (2016) 1 Cal.5th 398, 404–405; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1124; *Lent, supra,* 15 Cal.3d at p. 486; *People v. Lopez* (1998) 66 Cal.App.4th 615, 626.)  That is the situation we see here.  The terms of the

6

stay-away order exceed the scope of the crime of conviction, but they are not arbitrary. They are reasonably related both to Gomez's current conviction and to potential future criminality. Restricting him from associating with any minors, be they relatives or strangers, still advances the trial court's intentions: to keep him away from minors and facilitate his own rehabilitation.

Sexual assault against children is often a crime of opportunity. It is not irrational to take the view, as the trial court apparently did, that child relatives must fall within the umbrella of the imposed protections the court had in mind because, if anything, the opportunity for Gomez to secrete himself away with them is greater than it is with strangers. The alternative, after all, was a much longer period of incarceration. Perhaps Gomez will earn enough trust with the trial court to warrant some degree of liberalization over time, but we cannot say that the stay-away condition, as imposed, was an abuse of discretion.

We conclude that the inclusion of relatives in the stay-away order is valid under the *Lent* test. Apart from its reasonableness under *Lent*, however, we do have some related concerns about vagueness. While vagueness has not been raised expressly in this appeal (the *Lent* test is statutory in nature), we will treat it as implicitly raised, since at the time this probation condition was imposed, prior to our Supreme Court's recent decision in *In re Ricardo P.* (2019) 7 Cal.5th 1113), constitutional overbreadth and vagueness issues commonly arose in tandem with, and were understood to embrace a subset of, the reasonableness issues that *In re Ricardo P.* now

directs us to address under the third prong of *Lent*. (*In re Ricardo P.,* at pp. 1137–1141 (conc. & dis. opn. of Cantil-Sakauye, C. J.).)[5]

As placed on the record at the sentencing hearing, the challenged stay-away order, by its terms, is as follows. Gomez must "not be in the presence of or attempt to contact by any method any person under the age of 18, without approval in advance and in writing by the probation officer, after consultation with his therapist." The court stated that Gomez's "three minor children [are excluded] from the reach of" the order, but also made clear that this exclusion does not include "other minors whom he may be related to" (which is the focus of the *Lent* argument Gomez makes). Beyond this, the court's only additional guidance concerning the reach of the stay-way order was its statement that the order prohibits Gomez "from going to or loitering near areas frequented by children, including, but not limited to, parks, playgrounds, and arcades."

The written minute order subsequently entered by the court, which Gomez acknowledged by signing it, tracks the court's oral announcement of the stay-away order quite closely, directing that Gomez "**[n]ot be in the presence of**, or attempt to contact by any method, any person under the age of 18 without approval in advance <u>and in writing</u> by the probation officer after consultation with the therapist. (*This includes going to or loitering near areas frequented by children including, but not limited to, parks, playgrounds,*

---

[5] We also note that, at the sentencing hearing, Gomez's counsel did cast the objection that has been framed on appeal as a *Lent* challenge in terms of vagueness, stating as follows: "I will just add that the term family member is extremely vague. Are we talking about immediate family? Are we talking about cousins by marriage? There is no limit to the term family member or what they consider to be family. Leaving that undefined is going to cause all types of problems."

8

*and arcades.  This also includes residing with any person under the age of 18, including own children or stepchildren*.) *excludes his own children."[6]

We think a common sense interpretation of this order, when read as a whole, is that Gomez will have the liberty to go anywhere he wishes to go subject to the other terms and conditions of his probation, so long as those places are not frequented *primarily* by children, as would be the case with some "parks" and "arcades" and certainly any "playground."  But it would not be the case, for example, of retail stores, movie theaters, or places of worship, all of which can certainly be said to be "frequented by children" and thus within the literal terms of the order without some clarification.

There may be other ways in which the language of the order can be sharpened so that it is more readily understandable and provides better guidance as to what is, and what is not, allowed.  While the principle that "[r]evocation of probation typically requires proof that the probation violation was willful" (*People v. Hall* (2017) 2 Cal.5th 494, 498) surely provides a degree of protection against inadvertent violations by Gomez, more clarity in the language of the order would guard against facial vagueness.  Toward that end, the court should, upon issuance of the remittitur, consider whether other clarifications of the order are warranted, in addition to the one modification we have suggested above by way of example.

### III.  DISPOSITION

The trial court's probation order is conditionally vacated, subject to reinstatement upon the same terms—including the directive that Gomez not be in the presence of minors outside his immediate family, a restriction we

---

[6] The language, "excludes own children," was handwritten.

9

here affirm—but with the addition of any clarifications that may be warranted to address the issue of vagueness.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.