Filed 8/21/23  P. v. Mustill CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>SEAN EVERETT MUSTILL,<br><br>      Defendant and Appellant. | C097107<br><br>(Super. Ct. No. 21PA014019) |

Following an August 2021 parole search of defendant Sean Everett Mustill's residence, the Department of Corrections and Rehabilitation (CDCR), Division of Adult Parole Operations (the Division), filed a petition for revocation of his parole, alleging three violations.  After a hearing, the trial court concluded the People established the violations and remanded defendant to CDCR.

On appeal, defendant asserts (1) the parole conditions were invalid, vague, and overbroad, (2) the petition was procedurally deficient, (3) the Division failed to provide

1

sufficient justification for overriding the recommendation for intermediate sanctions, and (4) substantial evidence does not support the trial court's determination. We affirm.

BACKGROUND

*Petition for Revocation of Parole*

On August 17, 2021, the Division filed a petition for revocation of defendant's life parole. According to the petition, defendant had been convicted of murder in the second degree (Pen. Code, § 187) and sentenced to 21 years to life.[1] He was released to parole in April 2016. In November 2016, he was convicted of possession of a controlled substance and sentenced to two years eight months in prison. He was most recently released on parole on March 27, 2020.

The petition alleged defendant violated three conditions. We discuss each condition and allegation in the order they appear in the petition.

Special condition No. 40 provided: "You shall not wear, carry on your person, or possess items (e.g., pictures, jewelry), clothing, or apparel with gang colors, signs, symbols, or paraphernalia you know or reasonably should know to be associated with gang affiliation and/or activity." The Division alleged that, on August 11, 2021, during a parole compliance search of defendant's residence, agents found "multiple items indicative of association with the Hells Angels Motorcycle Club . . . ."

Special condition No. 3 provided, in part: "You shall not consume, possess, or have access to any alcoholic beverages, liquors, or over-the-counter medication that contains alcohol . . . ." The Division alleged agents found three bottles of wine in defendant's refrigerator, one of which was open and not full.

---

[1] Undesignated statutory references are to the Penal Code.

2

The final allegation pursuant to general condition No. 3 provided, in part, "You shall comply with all of the instructions from your parole agent." The Division alleged an agent asked defendant for the passcode to his phone and defendant refused.

The evaluation section of the petition stated defendant had "been on gang GPS monitoring since 1/24/2020. [He] is classified per [CDCR] as a . . . 'Skin Head' gang member associate. Skin Heads are known to associate with Hells Angels members while incarcerated and have been known to have Hells Angels apparel and insignia while out on the streets."

The evaluation stated this would be defendant's third parole violation. He "received a violation in 2016 for Possession of amphetamine/methamphetamine, (2019) Possession of amphetamine/methamphetamine, Possession of drug paraphernalia, Possession of heroin, Possession of Alcohol, Possession of Materials Depicting Gang Activity, (2021) Possession of a Firearm and Possession of Heroin for Sale (Case Still pending . . .)."

The Division had considered specified intermediate sanctions short of revocation, but concluded they were inappropriate. The Division acknowledged the "parole violation decision making instrument" it was required to use (§ 3015, subd. (b)) recommended "moderately intensive" sanctions and a response of "continue on parole with remedial sanctions." (Capitalization omitted.) However, the Division disagreed. The Division emphasized defendant continued to disregard parole conditions and had been arrested several times over the preceding three years for serious violations including carrying a firearm and sale of narcotics. The Division characterized defendant as a danger to the public. According to the Division, defendant continued to associate with criminal street gangs and possess alcohol. The evaluation continued: "Unfortunately, [defendant] has shown little progress in changing his criminal lifestyle and his failures illustrate[] his resistance to positive changes. [Defendant's] failure to abide by his special conditions of parole makes it extremely difficult to supervise."

3

*Parole Revocation Hearing*

*The People's Case*

Parole agent Matthew Barnhart participated in the search of defendant's residence. In the garage, agents found gloves, a sticker, a bag, and tickets that were all associated with the Hells Angels. The Hells Angels are "identified as a security threat group . . . and is included in our gangs." The gloves had the numbers "8" and "1" on them, corresponding, alphanumerically, to the letters "H" and "A" for Hells Angels. The stickers were red and white and said "Hells Angels Highlands," and the bag said "Support 81 Highlands." Barnhart testified red and white are colors associated with the Hells Angels, and Highlands was a club within the Hells Angels. The tickets were for a Hells Angels event.

Parole agent Jason Rosso found bottles of what appeared to be wine in the kitchen refrigerator. People's exhibits 4 and 5 were photographs depicting what appears to be three bottles of wine. One of the bottles had been opened and was not full, and defendant had access to the refrigerator. Rosso did not test defendant for alcohol and did not test the liquid in the bottles. He acknowledged that when property is used to establish a violation, the property is to be seized and placed into evidence. He did not know whether the wine was seized, but an evidence form did not indicate it was. Defendant previously had pled guilty to a parole violation for possession of alcohol.

Rosso testified another agent attempted to search defendant's phone but was not able to open it. Rosso heard the agent ask defendant for the passcode, but the passcode provided did not work. There were multiple attempts to obtain the correct passcode. Rosso testified defendant refused to provide a passcode. According to Rosso, it was failure to provide the passcode, as distinguished from failure to open the phone, that constituted the violation.

4

*The Defense Case*

Defendant's wife lived with defendant and their two children. She testified the gloves were hers. She had won a "swag bag basket" at a fundraiser that included gloves and stickers and she put the basket in the garage. She acknowledged the items were affiliated with Hells Angels and that defendant had access to the garage and everything in it.

Defendant's wife asserted she did not know anything about the wine, does not keep wine in the house, does not personally drink wine and the wine found was not hers. She testified defendant did not drink and she had never seen him drink wine. When defendant sustained a prior violation, it was because of her empty beer can. She acknowledged defendant had access to the refrigerator.

With respect to accessing the cell phone and because defendant had difficulty remembering things, defendant's wife set up his phone to unlock with his thumbprint or face scan rather than a passcode.

Defendant also testified. He acknowledged he had been affiliated with the skinheads, that he was a "former white supremacist skinhead," but testified he dropped out in 2007. He denied knowing Hells Angels was a gang. He acknowledged he had access to the garage where the gang-related items were found.

Defendant pled guilty to a prior violation related to alcohol where he had access to a can of beer. He testified he did not drink wine, but acknowledged he had access to the refrigerator.

When agents told defendant to open his phone, he responded, "[W]hat for? Why do you want to see in my phone? I have private pictures in there. I have private correspondence. Why do you want to see?" Defendant then agreed to open his phone and agents asked for the passcode. Defendant responded, "[T]he code is I touch it. I look at it." Eventually, defendant opened the phone by touching it.

5

*The Trial Court's Determination*

The trial court found the People proved defendant had committed each of the three violations. The court remanded defendant to CDCR for future consideration pursuant to section 3000.08, subdivision (h).

DISCUSSION

I

*Validity of Parole Conditions*

A.     *Forfeiture*

Defendant challenges the parole conditions on grounds of validity, vagueness, and overbreadth. The People assert defendant forfeited these challenges. In general, the failure to object to a parole or probation condition forfeits the claim on appeal. (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1194.) "An objection may be raised for the first time on appeal only where it concerns an unauthorized sentence involving pure questions of law." (*Id.* at p. 1195.) On this record, defendant did not object to the parole conditions. However, inasmuch as certain of defendant's contentions raise pure questions of law, we consider the validity of the three conditions.

B.     *Validity Under Lent*

Defendant asserts the conditions were invalid as they were not reasonably related to future criminality. We disagree.

" 'The validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions.' " (*People v. Relkin, supra*, 6 Cal.App.5th at p. 1194.) "A condition of [parole] will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*People v. Lent* (1975) 15 Cal.3d 481, 486, superseded by statute on another ground as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6.) "The *Lent* test is conjunctive; all three prongs must be found

6

before a reviewing court will invalidate the condition." (*People v. Salvador* (2022) 83 Cal.App.5th 57, 62.) We focus our analysis on the third *Lent* prong, relating to future criminality, which " 'contemplates a degree of proportionality between the burden imposed by a [parole] condition and the legitimate interests served by the condition.' " (*Ibid.*) We review the imposition of parole conditions for an abuse of discretion. (*People v. Navarro* (2016) 244 Cal.App.4th 1294, 1299.)

With regard to special condition No. 40 addressing gang paraphernalia, in *People v. Lopez* (1998) 66 Cal.App.4th 615, the court determined imposition of a gang-related probation condition was not an abuse of discretion, even assuming the defendant's present crime was not gang related, where the defendant had admitted to membership in a gang. (*Id*. at pp. 624-626.) "Because '[a]ssociation with gang members is the first step to involvement in gang activity,' such conditions have been found to be 'reasonably designed to prevent future criminal behavior.' " (*Id*. at p. 624.) As stated in *Lopez*, courts "have found curtailments of an adult probationer's associations with specified groups to be proper where such restrictions serve a rehabilitative purpose, even where the crime in issue was not shown to have been group related." (*Id*. at p. 625, fn. omitted.) The *Lopez* court further noted, "[t]he restriction on the display of gang indicia was reasonable because it removed from [the defendant] the visible reminders of his past gang connection." (*Id*. at p. 626.)

Defendant admitted he had been affiliated with the skinheads — he was a "former white supremacist skinhead"— although he testified he dropped out in 2007. According to the petition, skinheads are known to associate with Hells Angels and to have Hells Angels apparel. Furthermore, when defendant was paroled in March 2020 his written notice and conditions of parole, which he signed and accepted, specifically informed him of special condition No. 40 because he "is a validated gang member, has a documented history of gang involvement/activity/association, and/or a current or prior conviction of Penal Code 182.5 and 186.22." Because the defendant was already classified as a

skinhead gang member associate and the condition at issue properly attempted to serve a rehabilitative purpose of deterring association with other gang members and for the reasons articulated in *Lopez*, we conclude the trial court did not abuse its discretion in imposing condition No. 40.

Relevant to special condition No. 3 addressing alcohol, "empirical evidence shows that there is a nexus between drug use and alcohol consumption. It is well documented that the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs." (*People v. Beal* (1997) 60 Cal.App.4th 84, 87.) "Based on the relationship between alcohol and drug use, . . . alcohol use may lead to future criminality where the defendant has a history of substance abuse and is convicted of a drug-related offense." (*Ibid.*)

In November 2016, defendant was convicted of possession of a controlled substance and he had several prior parole violations involving possession of controlled substances and alcohol. For the reasons articulated in *Beal*, the trial court did not abuse its discretion in imposing special condition No. 3.

General condition No. 3 required defendant to comply with parole agent instructions. "A condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 380-381.) Although the California Supreme Court has since acknowledged this language to be "expansive," it further noted this reflected the circumstances of the condition in *Olguin* and the "nonburdensome manner in which the condition helped to ensure the probation officer's safety and ability to properly supervise the probationer." (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1126.)

Here, the condition requiring defendant to comply with parole agent instructions enabled parole officers to supervise defendant effectively (*People v. Olguin, supra*, 45 Cal.4th at pp. 380-381), is not particularly burdensome and helps ensure parole officers' safety and ability to properly supervise defendant (*In re Ricardo P., supra*,

8

7 Cal.5th at p. 1126), and is thus " 'reasonably related to future criminality' " (*Olguin*, at pp. 380-381). The condition, and its application to reviewing the contents of defendant's phone to observe any indication of criminal or harmful activity, is eminently reasonable in the context of parole supervision.

C. *Vagueness and Overbreadth*

Defendant asserts the conditions are vague and overbroad. We disagree.

The vagueness doctrine bars enforcement of a law " ' "which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application." ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) " 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights — bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Salvador, supra*, 83 Cal.App.5th at p. 63.)

Defendant does not advance any substantive argument as to how the conditions were vague or overbroad. His arguments instead are in the nature of substantial evidence challenges. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Thus, we will not speculate as to what defendant's arguments are for him.

II

*Procedural Challenge to Petition*

Defendant asserts the parole violation report does not satisfy section 3000.08, subdivision (f) and California Rules of Court, rule 4.451(e), because it does not include sufficient justification for the determination that intermediate sanctions were insufficient. Defendant has forfeited his procedural challenge to the petition.

In *People v. Hronchak* (2016) 2 Cal.App.5th 884, the defendant asserted the revocation petition "should have been dismissed for lack of consideration of intermediate

sanctions." (*Id*. at p. 892, fn. omitted.) The appellate court noted the defendant had not challenged the adequacy of the report in the trial court. (*Ibid.*, fn. 5.) "That omission would usually result in a forfeiture of this issue on appeal. [Citation.] However, the Attorney General . . . has not suggested we decline to review the merits of [the defendant's] claim of procedural error." (*Ibid*.) Therefore, the court proceeded to the merits. (*Id*. at p. 892.)

Unlike *Hronchak*, here, the People assert defendant forfeited his challenge. We agree. By failing to demur or otherwise challenge the petition in the trial court, defendant has forfeited his claim of procedural error. (See generally *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [discussing forfeiture].)

III

*Election to Seek Revocation*

Defendant asserts the request for revocation was inconsistent with CDCR policies, and that the Division erred in rejecting the recommendation of a lesser sanction. To the extent defendant is contending the Division improperly chose to seek revocation, apart from his forfeited procedural argument, and to the extent such a contention is cognizable on appeal, we disagree.

"When a parole violation occurs, the supervising parole agency 'may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions.' " (*People v. Perlas* (2020) 47 Cal.App.5th 826, 832, quoting § 3000.08, subd. (d).) "However, '[i]f the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions . . . are not appropriate, the supervising parole agency shall . . . petition . . . to revoke parole.' " (*Perlas,* at pp. 832-833, quoting § 3000.08, subd. (f).)

In the petition, the Division acknowledged the decisionmaking instrument it used recommended moderate sanctions, and stated it had considered specified intermediate

10

sanctions, but concluded they were inappropriate. The Division emphasized defendant continued to disregard parole conditions and had been arrested several times for serious violations including carrying a firearm and sale of narcotics. The Division characterized defendant as a danger to the public. Its evaluation continued: defendant "has shown little progress in changing his criminal lifestyle and his failures illustrate[] his resistance to positive changes." The Division concluded defendant's failure to obey parole conditions made it extremely difficult to supervise him. The Division engaged in an individualized consideration of defendant as required and concluded intermediate sanctions were inappropriate. (See Cal. Rules of Court, rule 4.541(e) [report must include reasons for determination intermediate sanctions are inappropriate]; *People v. Perlas, supra*, 47 Cal.App.5th at p. 833 [specific reasons intermediate sanctions are inappropriate must be individualized to parolee].)

IV

*Substantial Evidence*

Defendant asserts that the evidence did not support the trial court's findings that he violated each of the three conditions. We disagree.

We review the trial court's factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) In considering a substantial evidence challenge, "[w]e review the whole record most favorably to the judgment to determine whether there is substantial evidence--that is, evidence that is reasonable, credible, and of solid value--from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.) We "neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the [trier of fact] reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted

11

simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

With regard to the gang paraphernalia condition, agents found in defendant's garage multiple items associated with the Hells Angels, which is considered a gang. Gloves had the numbers "8" and "1" on them, corresponding, alphanumerically, to the letters "H" and "A" for Hells Angels. Red and white stickers — colors associated with Hells Angels — said "Hells Angels Highlands," and a bag said "Support 81 Highlands." Highlands was a club within the Hells Angels. Agents also found tickets to a Hells Angels event. Defendant's wife testified she won the items at a fundraiser and put them in the garage. Defendant and his wife both acknowledged defendant had access to everything in the garage. Defendant also acknowledged he was a "former white supremacist skinhead," but testified he dropped out in 2007. While he denied knowing Hells Angels was a gang, given his historical gang affiliation and the ties between skinheads and Hells Angels, the trial court reasonably could have discredited this testimony. Substantial evidence supports the conclusion defendant violated this condition by possessing items in the garage he knew or reasonably should have known "to be associated with gang affiliation and/or activity."

With regard to the special condition prohibiting "access to any alcoholic beverages," Rosso found bottles of wine in the refrigerator, one of which had been opened and was not full. People's exhibits 4 and 5 depicted three bottles of wine. Defendant's wife was not aware of the wine in the refrigerator. She and defendant both testified defendant did not drink wine. Rosso did not test defendant for alcohol, did not test the liquid in the bottles, and did not know whether the bottles were seized. However, the trial court reasonably could have concluded the liquid in the bottles was wine. Rosso, defendant, and his wife all agreed defendant had access to the refrigerator. Substantial evidence supported the trial court's determination defendant violated this condition by having access to alcoholic beverages.

12

General condition No. 3 required defendant to "comply with all of the instructions from your parole agent." Rosso heard an agent ask defendant for his phone passcode, and after debating why access to his phone was necessary, the passcode provided did not work. There were multiple attempts to obtain the correct passcode. Defendant's wife testified defendant's phone was opened with a thumbprint or face scan because defendant could not remember passcodes. Defendant testified that, when agents asked him to open his phone, he responded, "[W]hat for? Why do you want to see in my phone? I have private pictures in there. I have private correspondence. Why do you want to see?" He then opened his phone by touching it. However, Rosso testified it was the repeated failure to provide the passcode, and defendant's failure to follow the instructions to provide the passcode, not the failure to open the phone, that constituted the violation. Substantial evidence supports the trial court's determination defendant violated this condition.

DISPOSITION

The judgment is affirmed.


/s/<br>
BOULWARE EURIE, J.

We concur:


/s/<br>
RENNER, Acting P. J.


/s/<br>
KRAUSE, J.

13